J. M. BENNETT ET AL. v. W. A. LATHAM.

Delivered March 24, 1898.

**1.  Survey—Construction of Calls.**

The calls for course and distance in a junior survey yield to a call for the lines of senior adjoining surveys on either side as boundaries, if the calls for course and distance would carry the intersecting lines beyond the lines of the senior survey as fixed by their own field notes.

**2.  Covenant of Warranty—Quantity Conveyed.**

A covenant of warranty of title does not cover a deficiency in the acreage within the prescribed boundaries, but the grantee is entitled to relief in equity if the deficiency was the result of a mutual mistake of the parties.

**3.  Interest—Runs From Date of Payment, When.**

The purchase price paid for a tract of land, and which is recovered by the purchaser because of a mutual mistake as to the acreage of the tract, bears interest from the time it was first paid.

**4.  Sale of Land—Recovery for Mistake.**

A grantee of land who is entitled to recover a portion of its price from his immediate grantor because of a mutual mistake as to the quantity comprised in the tract is not entitled to a judgment against a remote grantor, although the latter may be liable to the immediate grantor because of a similar mistake.

APPEAL from Galveston.    Tried below before Hon. WILLIAM H. STEWART.

*Austin & Rose* and *J. R. Bennett*, for appellant.

*Wheless & Bennett*, for appellee.

WILLIAMS, ASSOCIATE JUSTICE.—Appellee, Latham, brought this suit against the appellants, Bennett and Burnett, to recover upon their warranties of title part of the purchase money paid by him to Bennett for a tract of land bought·by him from Bennett, and by Bennett from

Burnett, as containing 640 acres, but which contained only 492 acres. The land was described in the petition as being section No. 5, patented to Burnett as assignee of Beaty, Seale & Farwood, and its metes and bounds as given in the deed from Bennett to Latham were set out. It was alleged that Burnett sold and conveyed the section to Bennett, as containing 640 acres, by the acre, at $7 per acre, with general warranty of title, and that Bennett had in same way conveyed it to Latham at $9 per acre. Breach of both warranties was alleged to have occurred through a conflict between the tract conveyed and the Mary Sloan, an older survey, in consequence of which plaintiff had been evicted of 148 acres. The petition also charged that Bennett had pointed out the boundaries of the tract conveyed to plaintiff, and represented it to contain 640 acres, and that the sale and purchase were effected under mutual mistake of both parties as to quantity. There were allegations concerning a former suit by one Burgess against Latham in which, it was asserted, the eastern boundary of section No. 5 had been fixed so as to conclude Bennett, but in the view taken of the case this becomes immaterial.

The court below rendered judgment in plaintiff's favor, for the value of the deficiency, against both defendants at $7 per acre, and, in addition, against Bennett at $2 per acre; and gave judgment over in Bennett's favor against Burnett for the amount adjudged against them jointly, or such part of it as Bennett should pay to Latham; but refused to allow plaintiff interest upon the money paid Bennett for the shortage in the land.

The defendants have prosecuted a joint appeal, and plaintiff has assigned as error the refusal to allow interest.

Section 5 was patented to Burnett, as assignee of Beaty, Seale & Farwood, March 21, 1879, by the following field notes: "Beginning at S. W. corner of survey No. 5, Washington County Railroad Co.; thence north with its west line 2000 varas; thence west 1547 varas stake on east line of Mary Sloan's survey; thence S., 10 degrees W., 1479 varas to M. Sloan's S. E. corner; thence N., 80 degrees W., 290 varas; thence S., 10 degrees W., 603 varas; thence east 2193 varas to beginning, containing 640 acres."

April 3, 1890, Burnett conveyed it by the same field notes to Bennett, at $7 per acre for 640 acres. December 12, 1892, Bennett conveyed it to Latham, as containing 640 acres, at $9 per acre, which consideration was paid April 3, 1893. This deed described the land as "640 acres patented to J. H. Burnett as assignee of Beaty, Seale & Farwood, known as Beaty, Seale & Farwood survey No. 5." "Beginning at the S. E. corner of the Mary Sloan survey; thence N., 10 degrees E., 1479 varas to a stake for corner; thence east 1547 varas to a stake for corner; thence south 2000 varas to a stake for corner; thence N., 10 degrees E., 603 varas to a stake for corner; thence S., 80 degrees E., 290 varas to beginning, containing 640 acres."

Both parties, at the time of the sale, supposed the section to contain

640 acres, and Bennett so represented it to Latham. The parties went upon the ground and some of the supposed corners and boundaries on the west and north were pointed out, but it is not made clearly to appear where these were with reference to the true lines and corners of the Sloan survey. It does satisfactorily appear, however, that Latham bought by the acre upon the representation that there were 640 acres in the survey. Prior to the original survey of the section in question, a block of surveys had been made on the ground for the Washington County Railroad Company, of which No. 5 called for in the field notes of the Beaty, Seale & Farwood No. 5, was the most westerly. It was in the open prairie, and its lines and corners were unmarked. It tied on the north to the Mary Fabreau survey, which in turn tied to the Williams or McKissick league. Its location could only be ascertained by running the lines of those surveys. A surveyor who testified in the trial below and whose evidence was evidently adopted by the court, made a survey, and in the way indicated established the situation of the Washington County survey No. 5. It was found to harmonize with the field notes of the other surveys for the same company lying east of No. 5, which were marked on the ground, and with all other surrounding surveys. This evidence satisfactorily established the location of the Washington County survey No. 5. The Mary Sloan, on the west of the section in controversy, was a well-known survey, of which the lines were easily established, though its eastern boundary was in the prairie and un-marked. There is nothing upon the ground to indicate that the section in controversy was actually surveyed when located.

In March or April, 1893, Latham, by tenant, took possession of the section in question, built two houses and fenced about 160 acres. He testified that he took possession of the entire section, and that his tenant had the right to use all of it, but it affirmatively appears that no part of the improvement was upon the Sloan survey, and it does not appear whether or not any of it was within the lines of the Washington County survey No. 5. Hence it is not shown that he ever had pedal possession of any of the land within the lines of the section.

After the location of the section in question, the certificate, by virtue of which the Washington County Railroad survey No. 5 had been made, was floated, and a location in favor of C. W. Pressler, extending to the western line of the former survey, was made, and east of it and on part of the land formerly occupied by the former survey, another certificate, in favor of the International & Great Northern Railroad, was located. If the western line of the survey No. 5, Washington County Railroad Company, and the eastern line of the Mary Sloan survey are located according to the evidence of the surveyor referred to, the space between them occupied by the survey in question is less than 640 acres by 148 acres. To include 640 acres the lines of the section would have to be extended beyond the line of the Sloan on the west, or that of the other survey on the east.

The first assignment of error attacks the petition as stating no cause

of action. The point urged is, that the allegations failed to show a breach of warranty, in that they assert that part of the land conveyed to plaintiff is embraced within the Sloan survey, and at the same time show that the deed conveyed no part of that survey. If this were all the petition alleged, the proposition might be true. Indeed, we think it is true that the petition does not show a breach of the warranty. The covenant relates to the premises conveyed by the deed, and not to quantity. The petition shows that there could not be a conflict between the lines of the tract conveyed and those of the Sloan tract, since the deed makes the eastern line of the Sloan the western boundary of the land which it describes. The covenant could not be held to apply to any land occupied by the Sloan survey, inasmuch as the deed excludes that land from its description. But it does not follow that the petition shows no cause of action. While it sets up the covenant of warranty and attempts, but fails, to show a breach, it at the same time alleges other facts which entitle plaintiff to relief in equity from the effects of the mutual mistake of the parties, and the representations of Bennett, as to the quantity of land in the tract conveyed. Those facts do not authorize a recovery upon the warranty, but they do show a cause of action good in equity. The difference between the two actions is shown in the following decisions: Daughtry v. Knolle, 44 Texas, 450; Bellamy v. McCarthy, 75 Texas, 293; Doyle v. Horde, 67 Texas, 621; Smith v. Fly, 24 Texas, 345; O'Connell v. Duke, 29 Texas, 300.

This virtually answers the further point made in the same assignment, that the evidence fails to sustain the action because there is no conflict with the Sloan survey. It is true, in our opinion, that there is no such conflict, nor any with the survey on the east. The description given in the patent to the section in controversy necessitates this conclusion. The field notes call for the line of one survey as its eastern boundary, and for that of the other as its western boundary. Whatever may be the courses and distances called for, they must necessarily yield to these lines when they are ascertained. This is the true construction of the patent upon its face, and hence, in no just sense, can there be a conflict with the surveys on either side. The deed from Bennett to Latham, reversing the calls in the patent, does not call for the line of the Washington County Railroad Company No. 5 on the east, but it undertakes to convey Beaty, Seale & Farwood survey No. 5, and no other land; and this, by field notes, the same as those in the patent, with the exception indicated. The land which passed under the deed was the section covered by the patent, and no more. Had there been no mistake as to quantity, there could have been no cause of complaint. There was no breach of warranty, because Latham obtained title to all of the land which the deed purported to convey, there being no warranty as to quantity. His cause of complaint, therefore, arises from the fact that the tract conveyed by the deed does not contain the quantity bargained for, and arises from the circumstances attending the sale, and his remedy is in equity. But as against Bennett, we think he showed facts which en-

title him to such relief. The rules governing recoveries upon warranties are not applicable. Instead of being required to show eviction from or superior title to part of the premises conveyed, plaintiff is required to show that the quantity contracted for was not conveyed, with the other circumstances necessary to entitle him to recover in a court of equity. The second asignment is therefore inapplicable to the case as we view it.

The third assignment is as follows: "The judgment is erroneous, because the undisputed facts show that the surveyor intended to embrace by the field notes of the patent to the section in controversy, and the State thereby intended to convey to the patentee, 640 acres east of the Mary Sloan survey; that the boundaries of the Sloan survey were well established on the ground; that the State had not then parted with its title to any part of the Washington County Railroad survey No. 5 called for in the patent and subsequently occupied by the International & Great Northern survey No. 5 and the Pressler survey; that the beginning corner and first lines of the section in controversy are in the prairie, and can not be fixed by any objects on the ground; that by reversing the calls in the patent, or following the field notes in the deed to appellee, and commencing at the southeast corner of the Mary Sloan survey, the quantity of 640 acres could be obtained without conflict with any prior appropriated land; and the court erred in not so reversing the calls and giving controlling effect to course and distance called for, and rendering judgment for appellants, especially since appellee was in possession of the entire 640 acres and enjoying the same under appellants' deeds and from the molestation of anyone asserting an adverse title."

The answer to it is that the evidence fixes the location of the Washington County Railroad survey No. 5, and that of necessity determines the eastern boundary of the section in question. The first named survey was made first, and its location was fixed upon the ground, and could not be made to depend upon the calls in later surveys. Whenever, by following its own field notes, its western line was found, then the eastern line of this section was absolutely fixed, and could not be changed by the subsequent floating of the certificate. If, as has sometimes happened, the distance between the lines of two surveys called for in an intermediate junior survey is greater than is called for in the field notes of the latter, the question arises whether or not, in ascertaining the true boundaries of the junior survey, the call for the older line or for course and distance shall prevail, and the courts, under some circumstances, hold that the line should stop when the distance indicated is covered, and that the call for the older line should be disregarded as having been made by mistake. Gerald v. Freeman, 68 Texas, 201; Freeman v. Mahoney, 59 Texas, 626; Duff v. Moore, 68 Texas, 201; Booth v. Upshur, 26 Texas, 64. But such decisions can not be applied here. This survey can not possibly go beyond the lines called for, and they, being older, must be determined by their own field notes, and, when ascertained, they fix the location and quantity of the dependent survey.

The fifth assignment proceeds upon the theory that there was a conflict in the surveys, and hence is inapplicable to the view of the case held by this court to be the correct one.

The cross-assignment of appellee, alleging error in the refusal of the court to allow interest upon the money recovered from the time of its payment to Bennett, is, in our opinion, well taken. The money was paid for land which the appellee did not get under his deed, and the true ground shown for recovery was not, as we have shown, a breach of warranty. Hence no question as to responsibility for mesne profits was involved.

There being no error in the judgment of which the appellant Bennett can complain, it will be affirmed against him and his sureties for the sum adjudged below; and all costs, except those adjudged in favor of appellant Burnett, and as against Bennett alone, an additional sum will be adjudged on appellee's cross-assignment for interest which has accrued on that sum since the date of its payment, April 3, 1893. As to appellant Burnett the case is different. Appellee had no right of action against him except as warrantor, and there was no breach of his warranty. The only cause of action shown by appellee grew out of the circumstances of his purchase from Bennett, and was against the latter alone. If any cause of action of a like nature arose out of the trade between Burnett and Bennett, it accrued to the latter. Since Burnett, without objection on his part, was adjudged to be responsible to Bennett, and there is no assignment questioning this part of the judgment, it will not be disturbed. The assignments urged by both defendants do, however, involve the contention that no right of recovery was shown against either of them, and this requires us to hold, as we do, that no such right was shown in favor of plaintiff against Burnett. The judgment of this court as between appellee and Bennett should therefore be as before indicated; but as between appellee and Burnett, it should be to reverse the judgment below and adjudge that plaintiff take nothing of Burnett, and that the latter recover of the former costs of both courts. The judgment in favor of Bennett against Burnett is left undisturbed.

*Affirmed in part.*
*Reversed and rendered in part.*

Writ of error refused.