### NICHOLSON v. C. C. SLAUGHTER CO.
#### (No. 8258.)

(Court of Civil Appeals of Texas. Dallas. Dec. 6, 1919. Rehearing Denied Jan. 10, 1920.)

1. COVENANTS ⬅17—DEED CONVEYING LAND IN BULK AND NOT BY THE ACRE.

Deed conveying a designated quarter section not described by metes and bounds, "containing 160 acres," and reciting a consideration of $1 and four notes aggregating specified amount, *held* to convey land in bulk for a lump sum and not by the acre with quantity warranted.

2. COVENANTS ⬅47—VENDOR AND PURCHASER ⬅176—GENERAL WARRANTY OF TITLE DOES NOT WARRANT QUANTITY; PURCHASER NOT ENTITLED TO REDUCTION IN PURCHASE PRICE FOR DEFICIT IN QUANTITY OF LAND SOLD IN BULK.

Where land is sold in bulk for a lump sum and not by the acre with the quantity warranted, the general warranty of title does not include a warranty of the quantity of the land conveyed, and purchaser is not entitled to a reduction in the purchase price for a deficit in quantity in the absence of fraud or mistake.

3. COVENANTS ⬅79(1)—PURCHASER WHO ACQUIRED EQUITABLE TITLE COULD NOT RECOVER FOR SHORTAGE IN ACREAGE AGAINST REMOTE GRANTOR ON WARRANTY OF TITLE.

Purchaser could not recover for shortage in acreage against his remote grantor on such grantor's warranty of title, where purchaser had acquired only an equitable title, having purchased subject to vendor's liens, and where remote grantor had previously settled for deficit in number of acres with intermediate purchaser under whom purchaser claimed, since purchaser as holder of only an equitable title took title with all its imperfections and equities.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by the C. C. Slaughter Company against John Nicholson, in which defendant files cross-bill making C. C. Slaughter a party defendant. Judgment for plaintiff against defendant Nicholson, and that defendant Nicholson take nothing by his cross-action, and defendant Nicholson appeals. Affirmed.

William J. Hotz, of Omaha, Neb., and Seay, Seay & Malone, of Dallas, for appellant.

Pope & Young, of Dallas, for appellee.

TALBOT, J. The appellee, C. C. Slaughter Company, instituted this suit against the appellant, John Nicholson, October 22, 1917, on two notes, one for the sum of $920, secured by a vendor's lien on the northeast quarter of section 3, block T—2, and one for $920 secured by a vendor's lien on the southeast quarter of section 3, block T—2; said lands being situated in Lamb county, Tex. The suit was to recover the principal, interest, and attorney's fees provided for in said notice and to foreclose the vendor's lien on the land. On February 27, 1918, the appellant filed a general denial, special answer, and cross-bill, making C. C. Slaughter a party defendant and alleging that he was the owner of the land upon which the vendor's lien was sought to be foreclosed, that title had failed to 50 acres of the northeast quarter of said land, and prayed an abatement of the purchase-money notes sued on to the extent of the value of this acreage, or in the alternative for a recovery against the said C. C. Slaughter, under whom appellant claimed, on the general warranty of title contained in Slaughter's deed. The case was tried by the court without a jury, and judgment in favor of C. C. Slaughter Company against appellant Nicholson for the full amount sued for by said company with a foreclosure of the lien upon the land. Judgment was also rendered that appellant take nothing by his cross-action. From the judgment rendered this appeal is prosecuted by Nicholson.

The material facts are these: On October 3, 1883, patent 411 was issued to R. M. Thompson conveying to him his heirs or assigns forever 640 acres of land situated and described as follows:

"In Lamb county known as survey No. 3, block T—2, on the waters of Cat-Fish creek, a tributary of the Brazos river about 17 miles N. 32 deg. E., from center of the county, said land having been purchased and fully paid for under an act to provide for the sale of a portion of the unappropriated public lands of the state of Texas and approved July 14th, 1879; beginning at a buffalo shoulder blade the S. W. cor. of Sur.: No. 2 this Blk., R. M. Thompson; thence west 1,900 vrs. to buffalo shoulder blade for corner; thence north 1,900 vrs. to stake in the S. Bdy. line of E. L. & R. R. Co., Surs., Blk. S. 3; thence east 1,900 vrs. stake in the S. Bdy. line of said Blk. S. 3; thence south 1,900 vrs. to the beginning."

On October 6, 1890, this property was acquired by C. C. Slaughter by a general warranty deed in which the property was described as "survey No. 3, block T—2, patent No. 411, Lamb county, Tex. Reference was made to the patent for the full, complete, and better description of said land. On March 1, 1909, C. C. Slaughter sold and conveyed the east half of said section 3, block T—2, to W. P. Soash by two warranty deeds, using the following description: "The N. E. quarter (¼) of section 3, block T—2, containing 160 acres," and, "The S. E. quarter (¼) of section 3, block T—2, containing 160 acres." On March 18, 1910, by general warranty deed, W. P. Soash conveyed the land to Frank Hough, using the following description: "N. E. quarter (¼) of section 3, block T—2, containing 160 acres," and, "S. E. quarter (S. E. ¼) of said section 3, containing 160 acres." Frank Hough conveyed by a general warranty deed, on September 30, 1910, to George C. Gutru, the said half section of land, using the following description: "The N. E. (N. E. ¼) quarter and the S. E. (S. E. ¼) quarter of section 3, block T—2." On March 2, 1911, by general warranty deed, George C. Gutru, reconveyed said half section of land to Frank Hough, using the description last given. On February 21, 1912, by a general warranty deed Frank Hough conveyed to Henry Hoefler, using the description last given. On January 27, 1914, Henry Hoefler conveyed said half section to Patrick E. McKillip, and used the following description: "Survey No. 3, block T—2, patent No. 411, northeast (N. E. ¼) quarter and southeast (S. E. ¼) quarter." On March 13, 1914, Patrick E. McKillip conveyed said half section to the defendant, John Nicholson, by warranty deed and described the land as "The east half (E. ½) of section 3. (3), in block T—2, patent 411." All of the deeds heretofore mentioned recited the existence of four vendor lien notes, dated March 1, 1909, and being the same notes recited in the deed from C. C. Slaughter to W. P. Soash. In 1910, the state surveyor, W. D. Twitchell, made a resurvey of certain lands in Lamb county, Tex. This survey was made in accordance with law and under instructions from the General Land Office. By this survey the south boundary line of block S—3 was relocated and moved to the south, thereby overlapping the original survey as made for section 3, block T—2, shown by the above patent from the state of Texas, and cut from the north end of said section 3, block T—2, about 100 acres. The north part of said section 3 was cut out for its entire length of a mile on the north and about 299 varas wide at the east end, and 294.3 varas wide at the west end.

After the said state surveyor, W. D. Twitchell, completed his work of resurveying, he made plats and other records required by law, showing true and correct field notes

and location of said lands in Lamb county, which records were deposited with the county clerk of Lamb county, in 1910, and have, at all times since, been in his custody. These records were not spread upon the deed records.

On March 13, 1914, Lamb county had no official county surveyor, and none was appointed or qualified until April 13, 1914. About April 18, 1911, while the above-described east half of section 3, block T—2, was owned by Frank Hough, the alleged shortage or failure of title was discovered, and the said Hough asked for a credit on the vendor's lien notes then outstanding and owned by said C. C. Slaughter of the amount of said alleged shortage, and pursuant to said claim C. C. Slaughter, through the First National Bank of Big Springs, Tex., W. P. Soash, and Frank Hough adjusted said claim, whereby said Hough was given a credit of 55 acres at $11 per acre, amounting to $607, the amount of which credit was allowed on the vendor's lien notes shown in the Slaughter-Soash deed as first maturing.

C. C. Slaughter was the controlling stockholder and president of the C. C. Slaughter Company, a corporation, plaintiff in this suit. The two $920 notes sued upon are the vendor's lien notes, one against each quarter section, originally retained by the said C. C. Slaughter as a part of the consideration for purchase price of said land when he, the said C. C. Slaughter, sold the said half section to W. P. Soash.

At the time of the conveyance of said half section of land to defendant Nicholson, Lamb county was organized.

When defendant Nicholson accepted the deed from McKillip, recited above, he in good faith believed from the records relating thereto that he was acquiring two full quarter sections of land, or a total of 320 acres.

[1, 2] The first contention of the appellant is, in substance, that the trial court erred in holding that the sale of the land from Slaughter to Soash, the various sales thereof made by intermediate vendors, and the sale by McKillip to appellant Nicholson, were sales in bulk, because the several deeds of conveyance show that section 3, block T—2, was a full section; that said section was particularly described by metes and bounds in the patent; that appellant bought the land based on the original description of said section; and that the general warranty of C. C. Slaughter covered the acreage to which title failed. In this contention we do not concur. It clearly appears, we think, that the quarter section of land in which appellant claims shortage of 50 acres was sold in bulk for a lump sum, and not by the acre with the quantity warranted. This being true, the general warranty of title in C. C. Slaughter's deed did not include a warranty of the quantity of the land conveyed, and appellant was not entitled to reduction of the purchase price for a deficit in quantity, in the absence of allegations and proof of fraud or mistake. Brown v. Yoakum, 170 S. W. 803, and cases there cited. In the case of Mosteller v. Astin, 61 Tex. Civ. App. 455, 129 S. W. 1136, this court said:

"It seems to be settled law by the decisions of this state that the general covenant of warranty in a conveyance of land applies to the title, and not to the quantity of the land, and hence such covenant is not broken by a deficit in the number of acres named in the deed."

We further said this would be true even though the land may have been sold by the acre. Daughtrey v. Knolle, 44 Tex. 450; Weir v. McGee, 25 Tex. Supp. 20; Bennett v. Latham, 18 Tex. Civ. App. 403, 45 S. W. 934; Stark v. Homuth, 45 S. W. 761; Holland v. Ashley, 158 S. W. 1033. C. C. Slaughter's deed conveying the quarter section in question did not describe the land by metes and bounds, but simply described it as follows: "All that certain tract or parcel of land lying and being situated in Lamb county, Texas, being the northeast quarter (¼) of section 3, Blk. T—2, containing 160 acres," and the consideration expressed is $1 and four notes aggregating $1,440. No reference is made in this deed to the patent issued to Thompson for the 640 acres of land. There is no allegation of fraud, accident, or mistake in reference to the quantity of land sold, and appellant cannot recover for any shortage under Slaughter's general warranty of title.

The authorities cited by appellant are not, we believe, applicable under the facts and do not control the decision of the question. The land conveyed by Slaughter was not, as before stated, described by metes and bounds as in the cited cases.

Another contention of the appellant is that—

"The court erred in holding that John Nicholson could not recover on the general warranty because he only held an equitable title and was charged with notice of all defects and imperfections."

The proposition asserted is that—

"The holder of an equitable title can recover on his vendor's general warranty or any general warranty in his chain of title."

[3] The record does not disclose upon what grounds the court's judgment was based; but if the court held that appellant could not maintain an action on Slaughter's general warranty of title for an abatement of the purchase price of the land because appellant had acquired by his deed only an equitable title, and that Slaughter had previously settled with Frank Hough, one of the intermediate purchasers of the land, and under whom appellant claimed, for any deficit in the number of acres sold, the holding in our opinion was correct. As pointed out in our statement of the facts, while the section of

land In question was owned by Frank Hough under deed from W. P. Soash, to whom Slaughter had sold, the alleged shortage was discovered and Hough asked for a credit on the vendor's lien notes, then outstanding and owned by Slaughter, for the amount of such shortage, and pursuant to and in settlement and payment of said claim Hough was given a credit of 55 acres at $11 per acre, amounting to $607, and this amount was allowed as a credit on the vendor's lien notes shown in Slaughter's deed to Soash. The appellant purchased the land·subject to the recorded lien retained by C. C. Slaughter to secure the purchase-money notes; Slaughter's contract of sale, under which all of the subsequent purchasers, including appellant, claimed, was executory; and appellant by his purchase from McKillip acquired only an equitable title. It has been definitely held in this state that the protection given to purchasers of land for a valuable consideration without notice "extends only to cases where they have taken a conveyance, or, in other words, where they have purchased the legal title." So that when the purchase is only the equitable title, as in the case at bar, "it is taken with all its imperfections and equities, notwithstanding a valuable consideration may have been given, and there may have been no notice of equity or defense against the title." York v. McNutt, 16 Tex. 15, 67 Am. Dec. 607, and cases there cited; Slaughter v. Coke County, 34 Tex. Civ. App. 598, 79 S. W. 863; Spotts v. Whitaker, 157 S. W. 422; National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979.

The case of Roberts v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105, cited by appellant on the question, is not, we think, in point and cannot be accepted as authority for the proposition asserted by him.

The views expressed render a discussion and decision of the other questions raised unnecessary. For the reasons indicated, the judgment of the district court is affirmed.

Affirmed.