## BERKMAN v. D. M. OBERMAN MFG. CO. (No. 6340.)

(Court of Civil Appeals of Texas. Austin. April 13, 1921. Rehearing Denied May 11, 1921.)

1. **Constitutional law** ⚖=75 — **Trial** ⚖=393(2) —No reversible error in delegation of preparation of findings and conclusions of trial court to attorney.

It was not reversible error for the judge, in open court and over defendant's objection, to request counsel for plaintiff to prepare the findings and conclusions of the trial court, where the judge replied to the objection that he would not sign and approve them unless found to be correct, and they were subsequently submitted to him, and signed and approved; there being no real delegation of judicial function.

2. **Sales** ⚖=89—Contract may be modified by agreement.

A contract of sale, like other contracts, may be modified by agreement of the parties as to any of its terms or conditions, and gen-

erally such a contract may be modified without a new consideration, the consideration of the original contract being deemed sufficient, and a sufficient consideration may be found in a release or waiver of claims under the old contract, or a disadvantage imposed on one of the parties, or the mutual agreement of the parties.

Appeal from District Court, McLennan County; Erwin J. Clark, Judge.

Suit by the D. M. Oberman Manufacturing Company against Mrs. I. Berkman. Judgment for plaintiff, and defendant appeals. Affirmed.

W. L. Eason, of Waco, for appellant.
J. D. Williamson, of Waco, for appellee.

BRADY, J. Appellee, as plaintiff below, sued appellant for debt upon a verified account. The defenses included a sworn denial and a cross-action, consisting of items aggregating an amount in excess of plaintiff's demand. The cross-action was based upon alleged damages arising from the failure of plaintiff to ship and deliver certain merchandise covered by written orders, which it was claimed plaintiff had canceled without legal right.

There was a nonjury trial, and the court filed findings of fact and conclusions of law, upon which he rendered judgment for the plaintiff for the full amount sued for, and wholly denied recovery upon the cross-action. The findings of fact and conclusions of law of the trial court are as follows:

"(1) I find that in the year 1917, and for a long time prior thereto, and thereafter up to and including all of the times in controversy, that plaintiff, D. M. Oberman Manufacturing Company, a corporation, organized under the laws of Missouri, was engaged in the manufacture and sale of overalls, shirts, work pants, and kindred products, which it sold on orders sent to it at its head office at Jefferson City, Mo., by its various salesmen who took such orders from merchants throughout the United States, and that it was engaged in interstate commerce.

"That in the sale of its products to the retail trade that it used for convenience the trade name of King Brand Manufacturing Company.

"That in the sale of its products to the wholesale trade same was sold by it under its corporate name.

"(2) That on the 29th day of August, 1917, that its salesman, J. L. Weiler, took two orders from Mrs. I. Berkman, of Waco, Texas, for certain merchandise. The two orders were for January shipment and said orders were duplicates of each other. The amount of each of said orders was $1,177.50. The merchandise called for on one order was to be shipped to Waco, Tex., and that on the other order was to be shipped to Mrs. I. Berkman, at West, Tex.

"That said two orders were, for the purposes of identification, marked A-8 and A-9, respectively. That all of said order A-8, which was for shipment to Waco, Tex., was shipped by plaintiff to the defendant and same was there-after duly paid for, and such merchandise is not in controversy herein.

"(3) I further find that on order A-9, which was to be shipped to West, Tex., that there was placed on the original order the language, 'Sizes Later.' That this meant that before the merchandise called for in order A-9 was manufactured and shipped that the sizes of the respective garments called for in such order were to be furnished to plaintiff by the defendant.

"(4) I further find that on January 31, and before the time had expired for the shipment of the merchandise called for in order A-9, that Mrs. I. Berkman had furnished to plaintiff the sizes of the goods ordered on order A-8, and that on January 31, that plaintiff notified the defendant that she must furnish sizes on order A-9 in the next ten or 15 days.

"(5) I further find that on the 26th day of February, 1918, that the defendant notified plaintiff by letter with regard to sizes on order A-9, 'You can follow scale of sizes submitted for the first order (A-8),' but said letter contained a postscript asking plaintiff to hold order A-9, but ship instead now Nos. 850 and 857 pants, from order 16.

"(6) I further find that on August 27, 1917, the defendant, Mrs. I. Berkman, gave to plaintiff's salesman, J. L. Weiler, two orders for pants, the orders being numbered respectively, salesman's No. A-16 and A-17.

"That the amount of each of said orders was $291.25, and that said orders were duplicate orders, except that the merchandise called for in order A-16 was to be shipped to Waco, Tex., and the merchandise called for in order A-17 was to be shipped to West, Tex.

"(7) I further find that in conformity with the letter of the defendant of February 26, 1918, that the 850 and 857 pants from order 16 were shipped to defendant by plaintiff, and that such pants were paid for.

"(8) I further find that on March 5, 1918, that plaintiff advised the defendant that it could not hold open order A-9 for January shipment any longer than the 15th of March, and that if sizes were not received by that time to apply on said order that plaintiff would consider same canceled.

"(9) I further find that thereafter on the 20th day of February, 1918, that Mrs. I. Berkman gave to plaintiff's salesman two orders, being numbered 31 and 32 respectively. No. 31 was for merchandise to the amount and extent of $2,497.50, and No. 32 was for merchandise of the value of $1,390.50. That order No. 31 was for June shipment, and that order No. 32 was for September shipment.

"(10) I find that on May 26, 1918, Mrs. I. Berkman sent to plaintiff a schedule of sizes covering all merchandise ordered and unshipped on orders A-9, A-16, A-17, and on order 31, which was for June shipment.

"(11) I further find that on April 26, 1918, the United States government, by telegram, required the plaintiff for the use of the army to hold all of its stocks of twills and drills then on hand or in transit for decision of the army until May 5, and that on May 5 the government commandeered all material of that character then on hand or on order, owned by the D. M. Oberman Manufacturing Company, for the use

·of the government in the then existing war with Germany.

"(12) I further· find that on June 29 the plaintiff advised the defendant by letter of the commandeering for military use by the government of the material out of which the merchandise in defendant's orders would be manufactured, and that there was only a limited amount available for civilian use.

"(12a) That plaintiff further advised that it would extend to defendant credit to the sum and amount of $1,000, and that it would ship only to defendant merchandise to the amount and extent of $1,000 against order 31, and would cancel all other orders.

"(12b) That thereafter, on July 4, .defendant wired plaintiff to ship any portion of pending orders, and on July 5, plaintiff wrote to defendant that the merchandise which it would ship to defendant would be deducted from order 31, and unless this agreement was .confirmed that it would cancel all orders then unshipped, and not ship. to defendant any merchandise.

"(12c) That on July 11, 1918, defendant wrote to plaintiff, accepting the terms of such agreement, and asking that merchandise be shipped accordingly from order 31.

"(13) I further find that by the terms of letters of June 29, 1918, and July 5, 1918, from the plaintiff to the defendant, and the telegram of July 4, 1918, and letter of July 11, 1918, from the defendant to plaintiff, a new contract was entered into; such contract being in effect a cancellation of all unshipped prior orders to order No. 31, and that plaintiff would ship to the defendant merchandise to the amount and extent of $1,000 on credit from order No. 31.

"(14) I further find that plaintiff did in compliance with such agreement ship to defendant merchandise to the amount of $1,001.35 on July 19, 1918, from order No. 31, and that such merchandise was received by the defendant, and that same has not been paid for.

"(15) I further find that the plaintiff offered to ship to defendant the balance of the merchandise called for by order 31, and all of the merchandise called for by order 32, if defendant would pay the amount of credit extended on order 31, to wit, $1,001.35, but that defendant refused to pay said, amount, and that plaintiff refused to ship other and further merchandise on credit to defendant.

"(16) I further find that after the United States government commandeered the manufactured merchandise, both twills and drills, belonging to plaintiff then on hand and in transit, on May 5, 1918, and utilized plaintiff's factories in manufacturing garments for the government, and that two-thirds of the production of the entire factories was required by the government for its use during the war, and that only one-third of the product of the factories could be applied to civilian use.

"(17) I further find that the plaintiff had to obtain material for the manufacturing of the merchandise such as was called for by the orders of the defendant from such sources as it could obtain such character of merchandise, and that same would be obtained in comparatively small quantities only; and that plaintiff could not obtain sufficient merchandise to fill the orders for its customers, inclusive of the defendant, by virtue of the commandeering of its cloths and commandeering of the use of its factories by the government from May 5 up to and inclusive of November 11, 1918, the date of the armistice.

## "Conclusions of Law.

"(1) I conclude as a matter of law under the above facts that plaintiff and defendant, by the correspondence evidenced by letters of June 29 and July 5 from plaintiff, and replies thereto of July 4 and July 11, 1918, from defendant, entered into a new contract for the shipment of merchandise on credit, to the amount of $1,000, to be taken from order No. 31, and that such contract was fulfilled by the plaintiff by the shipment of merchandise on July 19, to the amount of $1,001.35, now unpaid for.

"(2) I further conclude as a matter of law that there was a cancellation by agreement between the parties of all unshipped prior orders to order No. 31.

"(3) I further conclude that plaintiff was justified in refusing to extend other and further credit to the defendant than the sum· of $1,-001.35, and in refusing to ship other or further merchandise to the defendant after July 19, 1918.

"(4) I further conclude that the defendant is not entitled to recover on her cross-action asserted herein, and that judgment should be for plaintiff for the full amount sued for."

## Opinion.

[1] We are asked to disregard the findings and conclusions of the trial court, upon the ground that the judge delegated the preparation thereof to one of the attorneys in the case. The bill of exception shows that when defendant requested findings of fact and conclusions of law, the judge in open court requested counsel for the plaintiff to prepare the same, to which defendant objected, upon the ground just stated. The bill further shows that the court replied to this objection that he would not sign and approve the findings and conclusions unless found to be correct, and that they were thereafter submitted to the judge, who found the same to be correct, and in accordance with his views. They were then signed and approved by the judge, and ordered filed. The qualification to the bill shows that the request for findings was made verbally, while the court was in the act of entering judgment, and that the court suggested, as there were other cases awaiting call, it would be an accommodation to him if counsel would assume the clerical work of dictating the findings and conclusions as usual. The qualification also shows that the court thereupon gave to counsel, in the presence of attorneys for defendant, a brief outline of the facts controlling, and discussed at length the conclusions of law applicable; that the document prepared by counsel for plaintiff was in strict accord with the court's findings, and expressed the court's ruling on the law.

This court has passed upon a similar contention with relation to a trial court's having invoked the assistance of counsel in the

preparation of the charge, and held adversely to appellant's proposition here. We think the question, in principle, is the same, in respect to the preparation and filing of findings and conclusions. It should be enough to say that, under the facts disclosed by the bill of exception and its qualification, there was no real delegation of a judicial function. We must presume that the trial court gave due consideration to the findings and conclusions, as to their correctness and as to their entire compatibility with his views of the facts and the law. It may be added that the practice is not unusual, and certainly does not constitute reversible error, if any error at all, when resorted to under the circumstances here shown. The assignments raising this question are overruled.

There are certain interesting questions raised in the appellant's brief, to the effect that appellee had no legal right to cancel any of the orders because of failure by appellant to furnish sizes, nor by the action of the government in taking over certain materials and factories of appellee for uses of war, nor because of the attempted limiting of appellant's credit after the orders were received and accepted. In our view of the case, it is not deemed necessary to decide any of these questions, because there is another question which is controlling and decisive of the case.

The court found that, by virtue of the correspondence mentioned in paragraph 13 of his findings of fact, the parties had entered into a new contract to cancel all unshipped orders, except a portion of order No. 31, and that the amount of this order was limited to $1,000 on credit. The court further concluded as a matter of law that such new contract was entered into and was fulfilled by the plaintiff by the shipment of merchandise to the amount involved in this suit. These findings are assailed upon the ground that the alleged new contract was without consideration, and upon the further ground that it was procured by the fraudulent representations of the plaintiff to the effect that the government had commandeered all its merchandise, and that it was impossible to fill defendant's orders.

[2] We do not agree with either of these contentions. As to the question of consideration, the prevailing rule is announced in 35 Cyc. At page 124, under the topic of "Modification or Rescission of Contract," it is said:

"A contract of sale, like other contracts, may be modified by agreement of the parties as to any of its terms or conditions."

Under the head of "Consideration," it is said:

"Generally a contract of sale that is wholly executory may be modified without a new consideration, the consideration of the original contract being deemed sufficient. * * * A sufficient consideration may be found in a release, or waiver of claims under the old contract, or a disadvantage imposed on one of the parties, or the mutual agreements of the parties."

Under the head of "Rescission," at page 128, this statement is made:

"The power to rescind a sale by agreement is coextensive with the power to contract, and the mutual release of the rights of the parties under the contract of sale is regarded as a sufficient consideration for the agreement."

Again, in 13 Corpus Juris, at page 602, § 626, the rule is thus stated:

"While a contract remains executory on both sides, an agreement to annul on one side is a consideration for an agreement to annul on the other, and vice versa."

Numerous authorities are cited in support of the text, and we believe it announces the correct doctrine and is applicable to the facts of this case.

As to the question of fraud, the record fails to support the proposition advanced under the assignment. It is therein stated that the alleged fraudulent representations were believed by the defendant, and that she was thereby induced to enter into the new contract. These facts were pleaded by defendant, but the statement under the assignment and proposition fails to disclose any testimony tending to show this necessary element in a case of fraud. It is due able counsel for appellant to say that, if there were any such evidence in the record, it would be stated for our consideration. It may be added that our examination of the statement of facts also has discovered no testimony to this effect.

For the reasons indicated, we overrule the assignment attacking these findings, and hold that they sustain the judgment rendered by the trial court. All assignments have been considered, and believing that no reversible error has been shown, the judgment is affirmed.

We see no reason to adopt the suggestion of delay made by appellee, and decline to award the 10 per cent. penalty claimed under the statute.

Affirmed.