## LIBERTO et al. v. SANDERS et al. *
## (No. 6837.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 13, 1922. Rehearing Denied Jan. 10, 1923.)

**I. Exchange of property ⬤1—"Exchange of land" differs from "sale."**

An exchange of land, which at common law is designated a mutual grant of equal interest, not necessarily in value, but in dignity, as a fee for a fee, differs from a sale, in that no fixed money price or value is placed on either of the exchanged properties, but in a sale there is either a money consideration or the equivalent in property at a fixed valuation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Exchange; Sale.]

**2. Exchange of property ⬤8(2, 5)—Remedy for loss in exchange of land is to recover value of loss.**

In exchange of land, where no cash consideration is had and no value per acre is fixed as the basis of trade, the remedy is to recover the value of the loss, and, as security for reimbursement thereof, an implied equitable lien arises.

**3. Vendor and purchaser ⬤254(1), 265(1)—Vendor has implied lien·on land till purchase money is paid.**

A grantor of land has an implied vendor's lien on the land until the purchase money is paid, which does not, however, run with the land.

**4. Covenants ⬤130(4)—Action on breach of warranty for failure of title predicated on equitable estoppel.**

An action on breach of covenant of general warranty for failure of title is predicated on the doctrine of equitable estoppel, and the only damage recoverable is the consideration paid; if title fails, warrantor is required to return the consideration with interest, and is estopped to deny his expressly warranted title.

**5. Covenants ⬤47—General covenant of warranty applies only to whole title.**

A general covenant of warranty applies only to the whole title, and not to a shortage of acres, and only applies to that title to the whole of the land expressed in the deed to which the warranty of title applies.

**6. Covenants ⬤79(1)—Vendee may hold remote vendor for breach warranty of title.**

Covenants of warranty run with the land, and, for breach of title, vendees holding the title have remedy against remote vendors, provided there was no intermediate modification of the general warranty, by quitclaim deed or otherwise, to break continuity of the covenant.

**7. Principal and agent ⬤136(1)—No cause of action exists against agent, when principal is disclosed.**

No cause of action exists against an agent acting as such, when the principal is disclosed.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Suit by Frank Liberto and others against Samuel S. Sanders and others. From a judgment for plaintiffs against defendant named and Stella Sanders, but dismissing complaint against other defendants, and from an order sustaining defendant Gonzales State Bank & Trust Company's and others' demurrer to petition, plaintiffs appeal. Affirmed.

R. H. Ward, of Houston, and E. D. Henry, John H. Bickett, Jr., and L. W. Bickett, all of San Antonio, for appellants.

W. T. Miller, of Gonzales, and Ingrum, Smith & Gulley and Wm. J. Park, all of San Antonio, for appellees.

COBBS, J. This is a suit by the appellants, as plaintiffs below, against all the appellees, as defendants, in five separate counts. The first count was for rescission of an exchange of properties (real estate) that had been made between the appellant Liberto and the appellee Sanders; the second count was in the alternative for damages for deficiency or shortage in acreage of the lands conveyed in exchange to Liberto by Sanders, and for a lien upon the real estate conveyed in exchange by Liberto, to secure the payment of such damages, it being alleged that the appellee F. M. Fly claimed some right, title, or interest in the real estate conveyed by Liberto, by virtue of a deed thereto from Samuel S. Sanders and wife, Stella Sanders, appellees, and that all of the defendants claimed some right, title, and interest therein, but alleging that the same was inferior to the lien of Liberto for the damages claimed; and the statement in the brief of appellants that the second count was for damages for "failure of title" is incorrect; the third count was in the alternative for damages against immediate and remote vendors upon their respective covenants of warranty on account of a partial failure of title, and also seeking to hold these answering appellees, W. J. Bright, F. M. Fly, J. C. Bright, and Gon-

zales State Bank & Trust Company, upon the warranty of title to the land conveyed by Sanders and wife, covenanted in the deed from the appellee M. H. Davis to said Sanders and wife, on the alleged ground that said Davis took and conveyed title to said land for the benefit and as trustee and agent for these appellees; the fourth count was in the alternative also for damages against the appellees Samuel S. Sanders and Stella Sanders on account of said deficiency in acreage of the lands conveyed in exchange by them to Liberto; and the fifth count was for special damages in the nature of certain expenses which appellants had gone to in the way of surveying, abstracts, etc., in connection with the land which said Sanders and wife had conveyed in exchange to Liberto.

The suit against appellee Davis is based upon his alleged covenant of general warranty to Sanders, or is based upon a partial failure of consideration recited in the deed from Davis to Sanders.

The court sustained demurrer to appellants' suit as against Gonzales State Bank & Trust Company, F. M. Fly, and W. J. Bright. F. A. Houck and Ernest Fellbaum, having filed disclaimers, were dismissed from the suit. Appellants dismissed George C. Thompson, Julian Thompson, and L. M. Knight and Mrs. L. M. Knight from the suit. This left Samuel S. Sanders and Stella Sanders the only remaining parties to the suit.

The case was tried with a jury, and the court gave the following instruction to them:

"You are further instructed that the undisputed evidence in this case shows that the defendants Samuel S. Sanders and Stella Sanders sold and conveyed to plaintiff Frank Liberto the tract of land known as the John N. Ely Survey in Ft. Bend county, Tex., as and for 390 acres, at the agreed price and value of $30 per acre; that said land between said parties was and is of the value of $30 per acre; that said tract of land contained actually only 308.27 acres; that, by reason thereof, said tract of land lacked 81.73 acres of containing the number of acres conveyed by said conveyance from Samuel S. Sanders and Stella Sanders to Frank Liberto. You will therefore return a verdict in favor of plaintiff Frank Liberto, in the sum of $2,451.90.

"You are further instructed that the undisputed evidence in this case shows that the defendants Samuel S. Sanders and Stella Sanders represented to plaintiff Frank Liberto that said tract of land contained 390 acres, and sold and conveyed the same to him as and for 390 acres; that, by reason of said facts and circumstances, plaintiff Frank Liberto has reasonably and necessarily expended the total sum of $915.47, for which amount the defendants Samuel S. Sanders and Stella Sanders are liable to plaintiff. You will therefore return a verdict in favor of plaintiff Frank Liberto against the defendants Samuel S. Sanders and Stella Sanders, for the sum of $915.47."

Whereupon the jury returned their verdict in accord therewith, and in accordance with which the court entered its judgment thereupon, and from which the said Samuel S. and Stella Sanders perfected no appeal. Appellants appealed from the judgment of the trial court, in dismissing said cause against the several named appellees in sustaining the several demurrers.

The basis of this suit is to recover against appellees, remote vendors, the value of the difference in loss of acreage occurring in the exchange of land between Liberto and Sanders, which was recovered against them in the court below, which was 156 acres less than the alleged number of acres stipulated in the trade between what Sanders' land was supposed to contain and what it actually contained, as being a partial failure of the consideration for the conveyance by Liberto of his property to Sanders. Appellant sought to recover damages as for unpaid purchase price and the foreclosure of an equitable vendor's lien upon the property conveyed.

[1] In this transaction no money was passed. It was a pure and simple exchange of land, which at common law is designated a mutual grant of equal interests, not necessarily in value, but in dignity as a fee for a fee, and differs from a sale, in that no fixed money price or value is placed upon either of the exchanged properties; but in a sale there is either a money consideration or the equivalent in property at a fixed valuation. 39 Cyc. 1181. In Walker v. Renfro, 26 Tex. 142, it is said:

"Although the transaction was in effect an exchange of lands, it was not a technical exchange, and it seems to be the doctrine of the adjudged cases that the effect of such an exchange—that is, that if one party is evicted from the land conveyed to him, he may re-enter upon his own land which he had given in exchange—does not attach to a case like the present. 2 Hilliard on Real Property, 380; Id. 314, 315; Harland v. Eastland, Hardin (Ky.) 590; Cass v. Thompson, 1 N. H. 65. Both deeds contained an express covenant of warranty of title. That of Mrs. Walker vested in Renfro the title to the land in controversy. The consequence is that his alienee, the plaintiff, can maintain this action, and the right of action is not defeated by the failure of title to the labor. The defendant has her remedy for such failure of title upon the warranty in her deed. She has not sought it in her defense to this action, and must therefore be left to pursue it in another, should she think proper. We need not inquire what would have been the effect of the deed, had it contained no warranty."

The court said, in reversing the case of White v. Street et al., 67 Tex. 180, 2 S. W. 531, to determine whether the parties did agree upon the value of the 63 acres of land at the time the trade was made:

"For, if so, the value so agreed upon, with interest, furnishes a fair measure of damages. If, however, there was no such agreement, then the true value of the land ought to be ascer-

tained, and to this, with interest, will the plaintiff be entitled. The plaintiff claims a lien on the land which he conveyed to the defendant to secure whatever sum may be due to him, and we are of the opinion that he is entitled to it, the right of no third person intervening. The general rule is that a grantor or vendor of land has a lien on land sold to secure the purchase money."

In Letcher v. Reese, 24 Tex. Civ. App. 539, 60 S. W. 257, it is held:

"It has been held in this state that, in the exchange of lands under general warranties of title, if the title to one tract or any part of it fails, the grantee may sue the grantor on his covenant of warranty and that he has a lien in the nature of a vendor's lien on the land he conveyed to his grantor to satisfy his damages. It has also been held that, in cases of fraud entitling the grantee to a rescission of the sale or exchange, equity will, in addition to restoring him to the possession of his lands, give him a lien on the land he received to cover any cash payments made or damages sustained."

[2] In an exchange of land purely between parties, where no cash consideration is had, and no value per acre or otherwise is fixed as the basis of trade, the remedy is to recover the value of the loss, and as security for the reimbursement thereof an implied equitable lien arises and grows out of the transaction as security, provided, as said by Justice Stayton in White v. Street et al., supra: "He is entitled to it if the right of no third person intervening." Also, as said in Smith v. Price (Tex. Civ. App.) 230 S. W. 838:

"Unless she was barred by limitation, she was entitled to a money judgment as prayed for, and, unless the right of a third party had intervened, to a judgment fixing a lien on such land. White v. Street, 67 Tex. 177, 2 S. W. 529; Parish v. White, 5 Tex. Civ. App. 71, 24 S. W. 572; Seibert v. Bergman, 91 Tex. 411, 44 S. W. 63; Richardson v. Overleese, 17 Tex. Civ. App. 376, 44 S. W. 310; McElyea v. Faires, 79 Tex. 246, 14 S. W. 1060, 12 L. R. A. 93; Meyer v. Smith, 3 Tex. Civ. App. 37, 21 S. W. 996; note, 24 Am. St. Rep. 298; Flagan v. Hook, 134 Iowa, 391, 105 N. W. 155, 111 N. W. 982."

[3] It is clearly seen that this equitable lien grows out of the process of reasoning that the grantor of land always has an implied vendor's lien on the land until the purchase money is paid. But such equitable liens, not expressly reserved in conveyances, do not run with the land so as to affect the rights of third persons. To affect their rights they must be charged with notice, such as to put them upon inquiry of such lien. Briscoe v. Bronaugh, 1 Tex. p. 330, 46 Am. Dec. 108.

The court sustained the general demurrer, thus raising a fundamental question of law, requiring a very careful examination of the record.

The pleading alleged an equal exchange of lands; appellants owned the San Antonio property, and Sanders owned the Ft. Bend property, consisting of the 390 alleged acreage, at the time of the exchange, that he purchased from Davis, valued approximately at the sum of $30 per acre. In the negotiations, Sanders pointed out the Ft. Bend county lands and represented they contained 390 acres. It is not alleged that Davis made any such representations to Sanders when he sold to him. That there was a partial failure of the consideration of the trade may be true, because it was subsequently ascertained that the Ft. Bend county lands only contain 234 acres instead of 390 acres, making a deficiency of 156 acres, constituting a partial failure of consideration in the trade of $4,680, for which an equitable lien is sought to be foreclosed on the San Antonio property.

The petition shows a good cause of action against Sanders, and, as against him, appellant would be entitled to an equitable lien on the San Antonio property, but not against third persons. The allegations of the petition are in effect that the deed from Sanders to appellant conveys the John N. Ely survey, in Ft. Bend county, described as containing 390 acres, but in fact contained only 234½ acres. Hence, looking at the petition, it is not apparent that there was any failure of title but only a shortage of acres in the land conveyed. The petition then undertook to account for the shortage in acres by alleging it had been acquired by adverse possession of the owners and subsequent vendors of the Phillips survey, but does not show when the statute of limitation began to run or when it matured, or that the lost acreage, if in the Phillips survey, was no part of the Ely survey and therefore not conveyed, or that such adverse possession would not in that event be any part of the conveyed land. The land alleged to be a shortage and adversely held is not described, while, if the facts alleged justify a recovery for equitable relief, it would not justify a recovery on the ground of breach of warranty. Daughtrey v. Knolle, 44 Tex. 450; Lewis v. Ross (Tex. Civ. App.) 65 S. W. 504; Hollingsworth v. Mexia, 14 Tex. Civ. App. 363, 37 S. W. 455; Bennett et al. v. Latham, 18 Tex. Civ. App. 403, 45 S. W. 934; Holland v. Ashley (Tex. Civ. App.) 158 S. W. 1033; Gillespie v. Gray (Tex. Civ. App.) 230 S. W. 1027.

[4] An action to recover, on the breach of the covenant of general warranty for the failure of title, is predicated upon the doctrine of equitable estoppel, and the only damages recoverable for the breach of warranty is the consideration paid for the land. If the title fails, he is required to return the consideration received with interest. He is estopped to deny his expressly warranted title. Under a general warranty of title, as stated, there is no specific promise to pay or return any sum of money or property, but in the administration of the law the warrantor can-

not avoid his covenant, and thus the court administers equity, and makes him return, as the measure of damages, the sum of consideration paid him with interest thereon.

[5] Sometimes purchasers are willing, in cases of only partial failure of title, to keep the part to which the title is shown to be good and demand an accounting for that portion of the loss of the bargain not good. And again, in cases like the instant case, where a portion of the land had been adversely held long enough to specifically toll the statute of limitation, the suit is not based upon the breach of warranty as of complete failure of title, it being only a partial failure of title at most. Such a suit must be predicated upon the loss of the land, for the general covenant of warranty applies only to the whole title, for it is seen by the authorities that the covenant for title does not apply to shortage of acres, and only applies to that title to the whole of the land expressed in the deed to which the warranty of title applies. In Daughtrey v. Knolle, 44 Tex. 450, no better definition can be found on the subject than is amplified in that case by that able jurist, the late Justice Moore, long recognized as a lawyer of a profound knowledge of the common law, without which no man ever becomes a great lawyer, and he was furthermore specially recognized as one among the most accomplished land lawyers. In the above case, he says:

"But we are also of opinion, if the deed could be treated as the personal deed of appellant, that appellee has failed to show any valid ground of action against him. This action cannot be regarded as an appeal to the equitable power of the court to grant relief for fraud, misrepresentation, or mistake as to the quantity of land conveyed by the deed. Though appellee alleges that appellant, in selling said land and making the deed, 'either fraudulently or by mistake represented and warranted said tract of land to contain the quantity of 498 acres,' evidently there are no facts and circumstances set forth to show the alleged fraud or mistake entitling him to equitable relief. Obviously appellee supposed that the general covenant of warranty authorizes an action for a pro rata part of the purchase money, if there is a deficit in the quantity of land mentioned in the deed. Unquestionably, where land is sold by the acre, and in many cases, when the sale is in gross, and through fraud, misrepresentation or mistake there is a material error in the quantity of land conveyed by the deed, relief may be had in equity, whether the deed contains a covenant of warranty or not; for the court acts in such cases not upon the contract exhibited by the deed merely, but because it is shown by the evidence that the deed does not operate as by the real contract it was intended, and conveys more or less than it should have done. Certainly, when the vendor asks relief, where there is an excess conveyed by the deed, the covenants in the deed have nothing to do with the matter. And it is equally clear, when the purchaser complains that the deed does not convey the quantity of land for which he has paid, his action cannot be founded upon a mere covenant to warrant the title to the land conveyed. Rawle's Cov. for Title, p. 521.

"When the covenant is for quantity as well as for title, if there is a deficit, whether there is fraud or mistake is immaterial. The fact of deficit alone would entitle the purchaser to recover. Undoubtedly the parties, if they think fit, might put a covenant of this kind in the deed. But we cannot agree that the covenant of warranty of title imports such undertaking. The cases in the court in which relief has been had on account of a deficiency in the quantity of land sold have all shown some equitable ground for redress. No intimation is found in any of them that an action on account of such deficit could be maintained on the covenant of warranty of title. Smith v. Fly, 24 Tex. 345; Weir v. McGee, 25 Tex. Supp. 20."

[6] It is true that the covenant of warranty runs with the land, and, for breach of title, the vendees, holding the title, have their remedy against the remote vendors, provided there was no intermediate modification of such general warranty by quitclaim deeds or otherwise, to break continuity of the covenant.

The allegations in the petition, while of no importance on the question of the breach of the general warranty covenant, are of importance and relevant to the claim of fraud and misrepresentation made by the vendor at the time to the purchaser. The deed only purports to convey the John N. Ely survey, described as well as represented as containing 390 acres, but in fact only contained 234½, which made a shortage of 156 acres. Hence there was no failure of title or breach of warranty as to mere quantities, but to specific land.

Now the gravamen of the claim for shortage is for the value of the land lost, alleged to have been adversely held by the vendors of the Phillips survey, a different survey than that sold. If a part of the Phillips survey, it was no part of the Ely survey, and hence not sold. Therefore the only relief that appellant had was of an equitable nature and not on the warranty.

As seen from the authorities, there can be no recovery in actions of law in such cases from third parties for the breach of the covenant of warranty for shortage, to justify fixing the equitable lien thereon. The recovery, if any, must be on the ground of fraud and misrepresentation. In order to recover against third parties, there should have been definite and specific allegations of fraud made by the seller as the inducing cause for the sale, upon which the purchaser relied, that induced him to purchase, and that he would not have otherwise purchased and paid the consideration. After showing a cause of action against Sanders, to recover against the appellees it should also show their actual knowledge and participation in the fraud and that they took the San Antonio property with full knowl-

edge at the time. It does not predicate a recovery upon the ground of mutual mistake, for that would obviously deny any fraud or misrepresentation, and would afford no claim against the appellees, for it repudiates the charge of misrepresentation which, of course, passes out the claim of notice.

It did not allege appellant relied or acted on the fraud of Sanders in regard to the acreage, or in ignorance of its falsity, or by which he was induced to make the exchange, or that he would not have otherwise exchanged the properties, for indeed he may have made the exchange notwithstanding. Even though appellant may have been induced to make the exchange through the fraudulent misrepresentations, the allegations do not show any sum he was damaged, for the measure of damages in such cases would have been the difference between the actual value of the two properties at the time of the exchange. It is not alleged what the actual value of the land was at the time, but only the agreed value recited in the conveyance. Foster v. Atlir (Tex. Civ. App.) 181 S. W. 524; Medley v. Lamb (Tex. Civ. App.) 223 S. W. 1048.

The petition shows, on the 29th of June, 1915, M. H. Davis, for a recited consideration of an exchange of properties made by Samuel S. Sanders and Mamie T. Thompson and their promissory notes of even date for $6,455.00, payable three years after date to Davis, he executed and delivered to Samuel S. Sanders his general warranty deed for the 390-acre tract under discussion in Ft. Bend county, and thereafter, on the 3d of December, 1915, for the purpose of curing some defects executed to Sanders a corrected or confirmation deed, fully confirming and ratifying the deed with covenants of general warranty. It was not alleged there was any fraud committed in this exchange of lands.

[7] It is further alleged that "M. H. Davis acted, not in his own private, separate, individual capacity but for the interest, profit, and benefit of the defendants Gonzales State Bank & Trust Company, W. J. Bright, and F. M. Fly, whose agent he was."

The law is too well settled to need the citation of any authority that no cause of action exists against an agent acting as such, when the principal is disclosed. No facts are alleged to show any wrong committed by Davis in his individual capacity in making the sale to Sanders. He is not shown to have had anything to do with the trade of appellant with Sanders, or made or participated in any fraud in that sale. The other appellees acted as trustees for the Gonzales State Bank & Trust Company, the principal for all the other appellees, and the beneficial interest in or title to the property was and is in said bank.

In respect to the right to recover for the breach of title, because of the partial failure of title against any of the parties, there can be no recovery upon that theory.

To recover against any appellee on the ground of fraud and misrepresentation, there is no allegation that Davis committed any express fraud in selling the land to Sanders that induced Liberto to purchase from Sanders. Only between the latter two the alleged fraud is alleged. If there had been any allegation of fraud in the sale between Davis and Sanders, Liberto did not rely on it, nor did he have any right to do so, unless it were shown they, or any one of them, personally participated in the same.

A careful review of the pleadings and the authorities convinces us no cause of action is exhibited against appellees, and the judgment of the trial court is affirmed.

FLY, C. J., not sitting in this case.

---

⚙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes