SCOTT et al. v. WATSON et al. (No. 7126.)

(Court of Civil Appeals of Texas. Dallas. May 16, 1914. Rehearing Denied June 6, 1914.)

1. VENDOR AND PURCHASER (§ 284*)—REMEDIES OF VENDOR—ACTIONS—EVIDENCE—DIRECTED VERDICT.

Evidence in an action on a vendor's lien note or, in the alternative, for recovery of the land *held* to warrant a directed verdict for defendants on the ground that the note and land were not owned by plaintiffs, but had been allotted to another joint owner with plaintiffs in a parol partition.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 796–799; Dec. Dig. § 284.*]

2. PARTITION (§ 5*)—BY ACT OF PARTIES—PAROL PARTITION.

A parol partition of lands is valid, since each tenant in common or joint owner holds an interest in the entire land, and to partition it is for each to surrender his interest in the part allotted to the others, which is not considered a conveyance of land within the statute of frauds.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 13–17; Dec. Dig. § 5.*]

3. PARTITION (§ 5*)—BY ACT OF PARTIES—PAROL PARTITION.

Where R., W., and S. sold land, reserving a vendor's lien, and R. and S. orally agreed

with W.'s widow that she should have the notes and their two-thirds interest in the land for her one-third interest in another tract, in pursuance of which the notes were delivered to her, and she signed a deed for the other tract, the transaction constituted a parol partition.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 13–17; Dec. Dig. § 5.*]

**4. FRAUDS, STATUTE OF (§ 68*)—REAL PROPERTY—PARTITION.**

The statutes prohibiting the conveyance of land or an interest therein by parol have no application to a partition of lands, as the title is already in the party to whom allotted.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 109, 110; Dec. Dig. § 68.*]

**5. VENDOR AND PURCHASER (§ 261*)—REMEDIES OF VENDOR—LIEN—ASSIGNMENT.**

An ordinary transfer of a vendor's lien note to a stranger to the title of the land does not carry with it the superior title of the vendor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–686, 688–695; Dec. Dig. § 261.*]

**6. PARTITION (§ 9*)—ACT OF PARTIES—OPERATION AND EFFECT.**

Where, in the partition of land, the facts show that it was the intention of the parties that their entire interest should pass to one of them, or there could have been no other reasonable purpose, the law will carry out such intent, whether fully expressed in words or not.

[Ed. Note.—For other cases, see Partiti n, Cent. Dig. §§ 26–32; Dec. Dig. § 9.*]

Appeal from District Court, Henderson County; John S. Prince, Judge.

Action by H. C. Scott and another against Geo. H. Watson and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

W. R. Bishop, of Athens, for appellants. Richardson, Watkins & Richardson, of Athens, for appellees.

TALBOT, J. This suit was brought by the appellants, H. C. Scott and J. R. Reierson, against the appellees, George H. Watson, O. B. Watson and B. M. Coker, on the 8th day of August, 1913, to recover on a promissory note for the sum of $300, and interest, payable on or before October 1, 1907, and to foreclose a vendor's lien on the tract of land described in plaintiffs' petition, or, in the alternative, to recover the title and possession of said land. The petition alleges, in substance, that on and prior to the 25th day of November, 1905, Reierson, Wood & Scott was a mercantile firm composed of the said J. R. Reierson, J. C. Wood, and H. C. Scott; that on said 25th day of November, 1905, the said Reierson, Wood & Scott, being the joint owners thereof, sold and conveyed by deed the land in controversy to the defendants Geo. H. Watson and O. B. Watson; that the note sued on was given in part payment for said land; and that a vendor's lien was retained in both said note and said deed to secure the payment of said note, which defendants have failed and refused to pay.

The petition further alleges that plaintiffs, on January 1, 1913, were lawfully seised and possessed of said land, holding the same in fee simple; that on said date the defendants entered upon the same and ejected plaintiffs therefrom, and unlawfully withholds from them the possession of said land to their damage in the sum of $1,500. The prayer was for judgment for their debt and foreclosure of the vendor's lien, or that they have judgment for the title and possession of said land, for writ of possession, and general relief. The defendants pleaded a general demurrer, not guilty, and specially the statute of limitation, and that plaintiffs did not own the note sued on, or any part of it; that said note was sold and transferred by plaintiffs, in so far as they held any interest in the same, to Mrs. Ella Wood, and its payment secured to her by the indorsement of plaintiffs, and that, when said note became due, it was paid off and discharged in full and canceled, and that, after its transfer to Mrs. Wood, plaintiffs have never had nor held any right, title, or interest therein, nor in the land sued for; that the said J. C. Wood, husband of Mrs. Ella Wood, died in January, 1906, leaving a will by which his wife, Mrs. Ella Wood, was made the independent executrix and sole legatee of his estate, and that said will had been duly probated; that the copartnership firm of Reierson, Wood & Scott, at the date of the said J. C. Wood's death, owned the note sued on and four other notes of like character, given by the defendants George H. Watson and O. B. Watson to said firm for the purchase money of the land in controversy; that in January, 1906, after the death of the said J. C. Wood, plaintiffs and the said Mrs. Ella Wood entered into and made a partition of a portion of the said copartnership property, by which the plaintiffs became the sole owner of 160 acres of land in Henderson county, Tex., known as the S. A. Jordan pre-emption, and belonging to said copartnership property, and the said Mrs. Ella Wood became the sole owner of the said five vendor's lien notes, with the vendor's lien on the land in controversy; that such partition was fully executed and acted upon by said parties, and, at the request of the plaintiffs, the said Ella Wood joined with plaintiffs in the execution and delivery of a deed conveying said 160 acres of land to one Page and wife, for the benefit of said plaintiffs, the consideration for such conveyance being $2,400, which plaintiffs received and appropriated to their own use, and that the said Mrs. Ella Wood in turn became the owner of said five vendor's lien notes, including the one involved in this suit, and all of the interest that plaintiffs theretofore had in and to the land for which said notes were given; that all of the title theretofore held by said plaintiffs in and to

said notes and land was by said partition divested out of plaintiffs and invested in the said Mrs. Ella Wood; and that at no time since said date have the plaintiffs, or either of them, ever had any right, title, or interest in or to said notes, lien, or land.

The defendant Coker, further answering, says that he bought the land described in plaintiffs' petition from Mrs. Ella Wood October 22, 1910, and received a deed therefor, which was recorded in Henderson county, Tex.; that he paid a valuable consideration for said land without any knowledge of any lien against the same; that he bought the same in good faith, took possession, and made valuable improvements thereon, and is now the owner and holder of said land in fee simple. By supplemental petition plaintiffs specifically denied the allegations of defendants' answer, and averred that they indorsed the note sued on to Mrs. Wood, but that, after the same became due, they paid it to Mrs. Wood, and that she transferred and delivered said note to them, and since that time, January 30, 1908, said note has been the property of plaintiffs. They alleged that they were the owners of a two-thirds undivided interest in the land in controversy and prayed a recovery therefor. The case went to trial October 1, 1913, and, upon the conclusion of the evidence, the court instructed the jury to return a verdict in favor of defendants, which was done, and judgment entered in accordance therewith, and plaintiffs appealed.

[1] The first assignment of error is, in effect, that the court erred in instructing a verdict in favor of the defendants, because there was evidence showing that the note sued on had never been paid: that plaintiffs were grantors in the deed conveying the land in question, and received said note as a part of the consideration for such conveyance; that both said note and deed retained a vendor's lien on said land to secure the payment of said note; that plaintiffs had never released said lien or parted with the "higher legal title to said land"; and that defendant Coker bought said land with knowledge, both actual and constructive, of the existence of said note and the lien on said land. We differ from this view of the evidence in important particulars, and believe the assignment should be overruled. The trial court instructed the jury that the facts showed that the note sued on was barred by the statute of limitation, and that defendants' title was superior to that of plaintiffs.

[2] That the note was barred by limitation there can be no doubt, and we believe the court's interpretation of the evidence bearing upon the other phase of the case and his conclusion of its legal effect, is correct. It is fully settled that a parol partition of lands is valid in this state. It is said that it is upheld, "not so much upon the ground of estoppel, as because there is nothing in our statutes of frauds that prohibit a conveyance by parol of an interest in real estate." Wardlow v. Miller, 69 Tex. 395, 6 S. W. 292. In the case cited, as is well understood, it is pointed out that tenants in common (or joint owners, as were plaintiffs and Mrs. Wood) hold an interest in the entire land to which their cotenancy extends, but neither owns any particular portion of it to the exclusion of his cotenant; that to partition the land so as to give to each an exclusive ownership of a designated portion in severalty is for each to surrender his interest in the portion allotted to the others; and that this release of interest is considered by our courts not to be a conveyance of lands within the meaning of the statutes of frauds. See, also, Stuart v. Baker, 17 Tex. 418; Shannon v. Taylor, 16 Tex. 413; Gibbons v. Bell, 45 Tex. 417; Johnson v. Johnson, 65 Tex. 87.

[3] The evidence shows that J. R. Reierson, J. C. Wood, and H. C. Scott, composing the mercantile firm of Reierson, Wood & Scott, owned the land in controversy. On November 25, 1905, they sold and conveyed said land to Geo. H. Watson and O. B. Watson in consideration of their five promissory notes of $300 each, bearing interest at the rate of 10 per cent. per annum from maturity, the note herein sued on falling due "on or before October 1, 1907." The vendor's lien was expressly retained in said notes and in the deed made to the Watsons to secure their payment. In January, 1906, J. C. Wood died, leaving a will by which his wife, Mrs. Ella Wood, was made the independent executrix and sole legatee of his estate. At the time of J. C. Wood's death the said firm of Reierson, Wood & Scott owned, besides their stock of goods, the 160 acres of land mentioned in the pleadings. Some time after Wood's death, and perhaps in April, 1906, Reierson and Scott, who were then carrying on the former mercantile business of Reierson, Wood & Scott, had an opportunity to purchase a lot of dry goods and pay for the same by conveying to the owner of said goods the said 160-acre tract of land. With a view of making this trade, Reierson and Scott began negotiations with Mrs. Wood to secure her interest in the said 160-acre tract, she then being the owner of the interest formerly held by her husband in the land which had been sold to the Watsons, and in the notes given by them for said land, and in the said 160-acre tract. Mrs. Wood placed her business in the hands of her brother, H. D. Pickens, who was authorized to act for her in the negotiations mentioned. This being known to Reierson and Scott, they, through J. R. Reierson, called up Pickens over the telephone and informed him they had an opportunity to trade the 160-acre tract for a stock of goods, and proposed that Reierson and Scott would give their two-thirds interest in the land or notes involved in this suit for Mrs. Wood's one-third interest in the 160-acre tract. Pickens, acting for-

Mrs. Wood, refused this proposition, telling Reierson that he did not know the Watson boys (payers of the five $300 notes) to be good, and that the land which had been sold to them could not possibly be worth more than $900. This statement seems to have been repeated several times, resulting finally in Pickens, for Mrs. Wood, agreeing that, if Reierson and Scott would secure the payment of the first two of the five vendor's lien notes executed by the Watsons by their indorsement of said two notes, she would accept his proposition, telling him at the same time that the land for which the notes were given was not worth more than $900, and that he would take the notes, believing that Mrs. Wood would have to take back the land. Thereupon Reierson and Scott indorsed the first and second of said five notes, and delivered all of said notes to Mrs. Wood, and she in turn signed and executed with Reierson and Scott, at their request, a deed conveying to Page the 160-acre tract of land for which Reierson and Scott got the stock of goods they wished to buy. The first note indorsed by Reierson and Scott was paid by the Watsons, but they failed to pay the second one, and upon demand of Mrs. Wood Reierson and Scott paid it, and the note by the party representing Mrs. Wood was marked paid. When Mr. Scott, who paid this note, discovered that it had been marked paid, he requested that such indorsement on it be rubbed out, stating as a reason for such request that the payment of the note "is a clear loss to us as it stands, and we may some day get something out of those Watson boys." The word "paid" was about half rubbed out, and the note, without any written transfer or indorsement whatever of Mrs. Wood or any one acting for her, handed over to Mr. Scott. As contemplated, when Mrs. Wood took the five vendor's lien notes, the Watsons failed and refused to pay all of said notes, except the one first falling due. They were insolvent, and on the 27th day of March, 1909, they deeded the land for which the notes were given to Mrs. Wood, and she on October 22, 1910, for a consideration of $900, $100 cash, and a vendor's lien note for $800, due October 15. 1911, conveyed said land to the defendant Coker. From these facts it appears that Mrs. Wood became the sole owner of one portion of the common property of herself and Reierson and Scott, and Reierson and Scott, or their vendee, Page, the sole and separate owner of another part. By the transactions related the segregation of the property dealt with became complete, Mrs. Wood thereby "no longer owned any interest in the 160-acre tract, and Reierson and Scott no longer owned any interest in the notes and land taken by Mrs. Wood." By the written indorsement of the two notes, demanded by Mrs. Wood, before she would consent to and accept such a division of the joint property mentioned, the division thereof was made equal, which would not have

been, it seems, without such indorsement if the notes were not paid by the Watsons and she was compelled to take back the land. The wisdom of this demand is verified by the conditions which subsequently confronted her. The Watsons refused to pay the notes; she was compelled to take back the land, and only got in a sale of it $900, and of that amount only $100 cash. Mrs. Wood got no interest whatever in the stock of goods received by Reierson and Scott for the 160-acre tract of land. Pickens testified that Mrs. Wood gave her one-third interest in said 160 acres for Reierson and Scott's interest in the notes or the 120-acre tract sold to the Watsons, and, in answer to the question, "If Mrs. Wood did not give her interest in the land [160-acre tract] for the notes. Reierson said: 'It might be that me and Scott agreed to take that land out there [the 120-acre tract], or what it brought for our interest in the notes. It might have been that way; I don't know whether it was or not; I don't really understand the proposition. Probably it was that way. After we sold the land [160 acres] to Mr. Page, me and Mr. Scott got these goods, and Mrs. Wood did not get any interest in that stock of goods.'" A consideration of the testimony as a whole leads almost irresistibly to the conclusion that at the time of the transactions involved in this controversy the parties had in mind the absolute transfer to Mrs. Wood of the five vendor's lien notes and the vesting in her of such title as remained in Reierson and Scott by reason of the executory character of the contract of sale of the land to the Watsons. It is true the plaintiff Scott said, "I think my understanding about it was that the note wasn't carried out, and that we were just taking up an indorsed note, and of course I didn't think it ought to be marked paid," but we do not believe this alters the case. The evidence, as a whole, plainly shows an intention to effect a parol partition of the respective properties that passed from the one party to the other, and such was the legal effect of such transactions. As a result of the understanding, agreements, and consummated or completed contracts of the parties, Mrs. Wood's interest in the 160-acre tract of land passed to Reierson and Scott, or to their vendee, Page, which is, the same thing for the purposes of a decision of the question under consideration, and their entire interest in the notes and 120-acre tract sold to the Watson brothers passed to Mrs. Wood.

[4] The statutes, as we have seen, which prohibit the conveyance by parol of land, or an interest in land, have no application, because the title is already in the joint owner, whether it be the legal, equitable, or paramount title that remains in the vendor in an executory contract for the sale of land until the purchase money has been paid.

[5] That an ordinary transfer of a vendor's lien note to a stranger to the title of the land for which the note was given does

not pass or carry with it the superior title of the vendor is clear and unquestioned in this case, but Mrs. Wood held such title to the extent of the interest of her deceased husband in the entire 120-acre tract sold to the Watsons, and, in the partition made with Reierson and Scott, such superior or paramount title as they held passed to and vested in her without any writing to that effect or mention made of the transfer of such title.

[6] Where, as argued by counsel for appellees, in the partition of land the facts show that it was the intention and purpose of the parties that the entire interest of the joint owners should pass to one of them, or where there could have been no other reasonable purpose, the law will carry out the intent of the parties, whether the same was fully expressed in words or not. What appellants' rights might have been as indorsers of the note sued on, had suit been brought before the note was barred by limitation, we need not stop to inquire. Nor is it necessary to discuss their second assignment of error, which is that the court erred, for the reasons therein stated, in not instructing a verdict in favor of appellants for two-thirds of the land in controversy. This assignment raises practically the same questions presented by the first assignment, and what we have already said disposes of it against appellants.

Believing the proper judgment has been rendered, it is affirmed.