## Glenn v. Lowther.

(Decided March 8, 1927.)

## Appeal from Floyd Circuit Court.

1. Specific Performance.—Purchaser may not lie by and lead vendor to believe that he has abandoned contract, and then, when land has increased in value many times, claim benefit of contract he decided not to claim before land rose in value.

2. Specific Performance.—One who abandons contract when he has no money to carry it out, may not afterwards, when land has risen in value, claim specific performance of contract against other party.

3. Specific Performance is not an absolute right, but rests entirely in judicial discretion, and is to be exercised according to settled principles of equity with reference to facts of particular case, being denied where its enforcement would be inequitable.

4. Specific Performance.—Specific performance will always be refused, where party has slept on his rights, and acquiesced for great length of time.

5. Vendor and Purchaser.—Where original land contract wa sto be carried into execution in 30 days, unless prevented by unavoidable casualty, effect of modified contract only removing 30-day limit was that contract was to be carried out in reasonable time.

6. Vendor and Purchaser.—Where land contract was not carried out for seven years, and no demand was made for its execution, and evidence showed that purchaser had been insolvent and unable to carry out contract, it was presumed to have been abandoned.

7. Specific Performance.—Specific performance would not lie for enforcement of conveyance under land contract, where purchaser had previously been without means to carry out contract, and no steps were taken to enforce contract until after 7 years, when land had increased 20 times in value, and original vendor had died.

JOHN D. CARROLL, O. H. POLLARD and A. J. MAY for appellant.

S. S. WILLIS and B. F. COMBS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

On January 31, 1905, a written contract was entered into by D. A. Glenn and N. B. Armstrong in these words:

"THIS AGREEMENT, made and entered into by and between D. A. Glenn, of Covington, Ky., of first part, and N. B. Armstrong, of Ravenswood, West Va., of the second part, for and in considera-

tion of one ($1.00) dollar, the receipt of which is acknowledged. Witnesseth: That party of the first party hereby agrees to sell and convey to party of second part, or his assigns, a tract of land embraced in a deed from James Rush and wife to D. A. Glenn of date — day of ———— 189—, and of record in Deed Book —, page —, of the records at Prestonsburg, Floyd County, State of Kentucky, which by reference made part and parcel hereof as fully as if copied herein, for the price of ten ($10.00) dollars per acre, and agrees to convey same by general warranty deed to party of second part, or his assigns, or so much thereof as it may be found said party of first part has title to, at the rate of ten ($10.00) dollars per acre, as aforesaid, for not less than fifteen hundred (1,500) acres.

"A survey thereof and abstract of title thereto to be made and executed by and under the direction of Harman Harris, Esq., of said Prestonsburg, which is mutually agreed to

"The party of the second part agrees to the whole of the foregoing, and promises to pay the consideration of said conveyance in one-half cash upon the delivery of the deed, and the balance in one year thereafter, for which party of second part, or the grantee, will give his note to party of first part, payable at the First National Bank of Prestonsburg, Ky., in one year after the date thereof, bearing interest from date until paid, and to secure the payment of the same a lien shall be retained and granted upon the tract of land so conveyed.

"The deed to be executed and the money to be paid when the survey is executed and abstract of title made, and for this purpose 30 days' time may be allowed, and if from any unavoidable casualty same cannot be completed in that time, then an additional time may be granted.

"Given under our hands this January 31, 1905.
"(Signed) D. A. GLENN,
N. B. ARMSTRONG."

Armstrong made this contract with Glenn pursuant to a written agreement made by him and C. F. Lowther and J. W. Kaufman, dated January 28, 1905, by which, in consideration of $500.00, he agreed to "option and contract" for their use and benefit the Glenn land, the money

to be paid him when perfect title was made and the land conveyed to them. Armstrong turned over the, Glenn contract to Lowther and Kaufman, but did not assign it to them. On February 28, 1905, Lowther and Kaufman conveyed the contract to the Lowther-Kaufman Oil and Coal Company, a corporation which they had organized to take over this and a number of other like contracts they had made. On October 23, 1906, that corporation, being insolvent, made an assignment to Thomas P. Jacobs, &c., as trustees, of all its property. On January 20, 1907, the trustees, in consideration that the grantee would save them harmless from a number of claims, conveyed this contract and a number of others to the Carnegie Peerless Coal Company, of which C. F. Lowther was the president, and in substance the owner. On October 2, 1909, that company conveyed all these contracts to E. W. Venable for a consideration, "all paid to the satisfaction of C. F. Lowther." On June 26, 1911, E. W. Venable conveyed all these contracts to D. V. Lowther, the wife of C. W. Lowther, "without covenants and without recourse in any event whatsoever." On September 6, 1919, the Carnegie Peerless Coal Company executed to D. V. Lowther, wife of C. W. Lowther, an assignment of the contract executed by Glenn to Armstrong for a consideration, "all paid to the satisfaction of C. F. Lowther." D. A. Glenn died testate in the year 1911, and by his will devised all his property to his wife, Lucy M. Glenn. Lucy M. Glenn, on July 27, 1916, conveyed the land to her daughter, Ollie M. Glenn. On November 17, 1919, D. V. Lowther brought this action against Ollie M. Glenn for the specific performance of the contract executed by D. A. Glenn to N. B. Armstrong on January 31, 1905. The issues were made up and on final hearing the court entered a judgment in favor of the plaintiff. The defendant appeals.

It will be observed that by the contract of January 31, 1905, Armstrong agreed to buy at the rate of "$10.00 per acre, not less than 1,500 acres." It will also be observed that by that contract thirty days' time was allowed to make a survey and abstract of title. The proof shows that within thirty days a survey was undertaken but could not be completed because the deeds could not be located. The proof for the plaintiff shows that then there was a meeting between Armstrong and Glenn and there was a written contract removing the restriction as to the number of acres and providing that any number

of acres owned by Glenn was to be taken by Armstrong and the time limited for furnishing abstracts and making the survey was extended. This writing is not produced and the proof that it is lost is not wholly satisfactory, but it is conceded that this contract was the same as the original contract, except as to the restriction to the number of acres and the extension of the thirty days' time limit. How far it was extended does not appear, and nothing more appearing this would be only a reasonable extension. Nothing further was done under this contract in the way of making a survey or taking any steps to carry it out until after the death of D. A. Glenn; and then on August 12, 1912, A. W. Venable brought a suit against Lucy M. Glenn, alleging that he was the owner of the contract and praying its specific enforcement. This suit remained on the docket until the spring of 1919, when E. W. Venable appeared in that case and filed his affidavit stating that the suit had been brought in his name without his authority and asking that it be dismissed. D. V. Lowther then appeared in that action and asked that she be substituted as party plaintiff, alleging that the action had been brought in Venable's name by her under an agreement between her and Venable at the time of the assignment to her that the action for the specific enforcement of the contract should be brought in his name. The court dismissed the action and Mrs. Lowther then brought the present action on November 17, 1919, in her own name against Ollie M. Glenn, to whom her mother had conveyed the land in 1916.

The undisputed facts are these: The C. & O. R. R. line had just been built up the Big Sandy river. It had not been put in operation. C. F. Lowther and J. W. Kaufman were taking options or contracts for coal lands in Floyd county and several other counties. They took a large number of such options or contracts. They could not raise the money to meet their obligations. Suits were brought against them and judgments were rendered against them which were unpaid. The corporation which they formed to carry these contracts also became insolvent. Nothing was done by them toward carrying out the contract with Glenn from 1905 until 1912 for this reason. They were in no condition to carry out the contract and made no demand on Glenn to carry it out. They took no steps to this end. In the meantime the land had trebled in value. When this suit was brought a large coal operation had been opened on the land and it had

increased in value twenty times the price they agreed to pay, as the development had shown valuable deposits of coal. It is said that they took no steps in this time because a suit was filed against Glenn by a third party claiming title to a part of the land. But this suit was not filed for nearly three years after the contract of January 31, 1905, was made and nothing was done in the meantime toward carrying out the contract. This suit was decided in favor of Glenn in March, 1910, which was nearly a year and a half before he died, and yet no demand was made on Glenn to carry out the contract after that suit was over. A purchaser may not lie by and lead the other party to believe that he has abandoned the contract and then when the land has increased in value twenty times, claim the benefit of the contract he decided not to claim before the land rose in value. The record leaves no doubt that all of the holders of this contract, after 1905, were insolvent and utterly unable to comply with it; that the assignment to Venable was simply like the assignment to D. V. Lowther, a thing procured by C. F. Lowther, who at all times was the real party behind the screen, and then without means to carry out the contract. He who abandons the contract when he has not the money to carry it out may not afterwards when the land rises in value claim the specific enforcement of the contract against the other party. The rule as to specific performance is thus stated by the U. S. Supreme Court in Hennessey v. Woolworth, 128 U. S. 442.

"Specific performance is not of absolute right. It rests entirely in judicial discretion, exercised, it is true, according to the settled principles of equity, and not arbitrarily or capriciously, yet always with reference to the facts of the particular case."

In 25 R. C. L. p. 223, with the citation of many cases, the rule is thus stated:

"As already seen, an application for specific performance is an appeal to the sound discretion of the court, and one of the principles which control the exercise of this discretion is that specific performance of a contract will not be decreed where its enforcement would be inequitable under the particular facts as they exist. This is in accordance with the general doctrine of equity that when a party comes into a court of chancery seeking equity he must have

clean hands, and is bound to do justice, and not ask the court to become the instrument of iniquity. Therefore, before relief will be granted it must appear that good conscience and substantial justice require it.''

''Abandonment of the contract may be inferred from circumstances or the conduct of the parties inconsistent with an intention to perform.'' 36 Cyc. p. 720.

''In equity a party is not permitted to sleep over his rights, to the prejudice of the party on whom he makes a claim, and who by the delay may be deprived of the evidence and means of effectually defending himself. Therefore, a demand must be made within a reasonable time; otherwise the claim is considered stale, and a court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands when the party has slept on his rights and acquiesced for a great length of time. Nothing can call forth into activity a court of equity but conscience, good faith, and reasonable diligence. When these are wanting the court is passive, and does nothing.'' 10 R. C. L. p. 388.

Specific performance not being an absolute right, but resting entirely in judicial discretion and to be exercised according to the settled principles of equity with reference to the facts of the particular case, no specific performance can be adjudged here under the rule that specific performance will not be decreed where its enforcement would be inequitable under the particular facts as they exist, and will always be refused where the party has slept on his rights and acquiesced for a great length of time. The lips of D. A. Glenn being closed by death, his explanation of the long delay on the part of the purchaser to carry out the contract cannot now be shown. The purchaser was never in possession of the property. Nothing was paid on the purchase and no steps were taken for more than seven years looking to the carrying out of the contract, and some force must be given the fact that no such action was taken until after Glenn died. When this suit was brought the developments of the coal company had shown that there were valuable veins of coal on the land, making the property worth twenty times as much as the purchaser agreed to pay for

it, and the annual royalty to the owner was far more than the entire price to be paid for the property under the contract made on January 31, 1905. The original contract was to be carried into execution in thirty days unless prevented by unavoidable casualty. The modified contract only removing the thirty day limit, necessarily its effect was that the contract should be carried out in a reasonable time. When the contract was not carried out for seven years and no demand was made for its execution, it must be presumed that it was abandoned, for the evidence shows that the purchaser was insolvent and unable to carry out the contract. It would be wholly inequitable now to specifically perform this contract for him after Glenn's death, when his evidence cannot be had, and after the property has increased many times in value, when he took no steps to enforce the contract when it should have been enforced and was in fact unable at that time to carry out the contract.

Judgment reversed and cause remanded for a new trial.