## MYERS et al. v. CRENSHAW et al.
### No. 5159.

Court of Civil Appeals of Texas. Texarkana.
April 8, 1938.

Rehearing Denied May 5, 1938.

Smith & West and Stone & Wells, all of Henderson, Davis, Jester & George, of Corsicana, and Paul E. Daugherty and E. E. Fischer, both of Houston, for appellants.

Mayfield, Grisham & Grisham, Lasseter, Simpson & Spruiell, Weeks, Hankerson & Potter, Pollard & Lawrence, F. W. Fischer, N. E. Hendrickson, and E. Ewing Smith, all of Tyler, A. A. Garrett, of Overton, Bradley & Bradley, of Groesbeck, Brachfield & Wolfe, of Henderson, J. W. Timmins, of Dallas, Paul A. McDermott, of Fort Worth, Denman & Fowler and J. J. Greve, all of Nacogdoches, E. W. Merritt, of McKinney, Scott & Hall, of Marshall, and Phillips, Trammell, Estes, Edwards & Orn, of Fort Worth, for appellees.

WILLIAMS, Justice.

This is a trespass to try title action, tried to a jury, involving leasehold interests, royalty interest, and the fee-simple title to a 25-acre tract of land situated in Rusk county, Tex.

Rufus Jones, joined by his second wife, on September 11, 1930, executed an oil and gas lease to R. H. Laird. In December these parties executed a deed conveying ½ the minerals to B. F. Carroll, subject to the said lease. By mesne conveyances M. S. Thetford, J. E. Bradley, and Sun Oil Company were the owners of this Carroll interest. Later, in February, 1931, these same parties executed a deed conveying ¼ the minerals to Paul Daugherty, being subject to said lease. By mesne conveyances Glenn Myers, Home Corporation, Limited, Black Arrow Oil Company, R. H. Dearing & Sons, Royal Petroleum Company, and I. M. Williams, as trustee for R. H. Dearing & Sons, were the owners, at the time of the trial, of this Daugherty interest, and hereinafter will be referred to as the Daugherty associates.

Arah Crenshaw, the former wife of Rufus Jones, joined by her second husband, Howard Crenshaw, on October 11, 1932, executed a power of attorney conveying ½ her interest in the tract to W. H. Grier. By mesne conveyances said Grier, May Greve, A. A. Biggs, Hazel and Carl Hickman, T. F. Strahan, and Floyd Baton were the owners of a ⁷⁄₂₄ interest of the royalty at the time of the trial. These will hereinafter be referred to as the Crenshaw royalty.

Webb Kennedy, Emma Montgomery, Major Kennedy, Savannah Butts, and Arthur Kennedy, the surviving children and only heirs of Dink Kennedy, on July 11, 1933, executed a power of attorney and a conveyance of ½ their interests in the tract to G. W. Morgan, and these will hereinafter be referred to as the Dink Kennedy interest.

Opal Jean Givens and her father executed an oil and gas lease and two mineral deeds which purport to convey to J. H. Merett title to her entire interest in the minerals.

All the parties above named, grantors and grantees, save the Paul Daugherty and the Dink Kennedy interests, by various assignments conveyed the leasehold estate into one R. E. Moore, who on September 18, 1934 became the record owner of the leasehold estate:

This tract of land surveyed out 26.7 acres, and is herein referred to as the tract. The tract was then subdivided by metes and bounds into six parcels. Moore and the Kennedy interests entered into a partition agreement of the leasehold under which the Kennedys took a leasehold on a certain 1.7 acres of the subdivision and Moore the balance. Fred Birdsong later acquired the leasehold interest to the 1.7-acre parcel. By various assignments, transfers, and conveyances P. A. Wiley, J. Beren, trustee, J. H. Merett, R. E. Moore, Warner-Quinlan Oil Company, and the Overton Refining Company acquired leasehold interests in respective parcels of land under the division.

Glenn Myers and associates, holding under the Paul Daugherty ¼ mineral interest, instituted this suit on February 7, 1935, in which they made defendants all the respective parties heretofore named, except the Sun Oil Company, as well as others not necessary to name. The Sun Oil Company intervened and it with M. S. Thetford, J. E. Bradley, J. H. Merett, Fred Birdsong, P. A. Wiley, and J. Beren, trustee, in addition to answering on the merits, filed cross-actions against all the other parties in trespass to try title and to remove cloud.

Rufus Jones and his second wife answered on the merits, and also filed cross-action seeking a recovery of a ¼ royalty interest which he claimed to still own. The Kennedys and various other defendants answered with a plea of general demurrer, general denial, and plea of not guilty. Opal Givens was dismissed from the suit. The findings of the jury on the issues submitted to them were duly accepted by the court, and those pertinent to this opinion will appear later.

The judgment awarded the Sun Oil Company a ¼, Arah Crenshaw and associates ½, Bradley and Thetford each a ⅛ of the royalty interest in the entire tract; Bradley a certain interest in the leasehold estate of one of the subdivisions; P. A. Wiley and J. Beren, trustee, Overton Refining Company, and R. E. Moore each leasehold estate in respective subdivisions; Birdsong a leasehold estate in a 1.7-acre tract; and Merett a leasehold estate in a 4-acre tract of the subdivision as against all parties to the suit.

Daugherty associates and Rufus Jones were denied a recovery of any interest. The ¼ interest claimed by the Kennedys was denied and their interest quieted in the other defendants. The Daugherty associates, the Kennedy interests, and Rufus Jones and wife have perfected separate appeals.

On December 2, 1884, James H. Wynne and wife conveyed by deed to Marcus Jones a 146-acre tract of land which included the 25 acres involved in this suit. This conveyance recites a consideration of $1 cash and the execution of one promissory note of even date with deed, due one day after date, and reserves the superior title until this note or purchase money is paid. This property so acquired became the community property of Marcus Jones and his wife, Mary. Six children were born to this marriage. These six children and one Dink Kennedy, child of Mary Jones by a previous marriage, survived Marcus and Mary Jones. Upon the death of the parents, both dying intestate, by the laws of descent and distribution in Texas, Henry Jones, his brothers and sisters and his half-brother, Dink Kennedy, became tenants in common. Heller v. Heller, 114 Tex. 401, 269 S.W. 771.

November 7, 1903, by a deed reciting a consideration of $1 cash, Henry Jones acquired the interest of all his brothers and sisters, except his half-brother, Dink.

June 27, 1914, a renewal agreement filed for record was executed by Henry Jones to one A. J. Smith which recited the above-mentioned vendor's lien note as being then owned by A. J. Smith and Henry Jones as being the party obligated to pay same, extended the payment to November 1, 1914. This agreement further recites: "Without prejudice to any liens or rights retained to the grantor, his heirs or assigns, in the original deed of conveyance." This record reflects no execution or recordation of any transfer of the vendor's lien and superior title from Wynne to Smith. Under a warranty deed dated November 11, 1915, filed for record the same day, Henry Jones conveyed to A. J. Smith this 146-acre tract, reciting the consideration to be the cancellation and surrender of the vendor's lien note theretofore executed by Marcus Jones payable to Wynne or bearer. This deed recites the note as having been renewed by Marcus Jones on December 4, 1888, October 31, 1892, August 6, 1896, and October 21, 1899; and recites that Henry Jones renewed same October 14, 1903, and October 22, 1913. None of these renewal agreements or any recordation of any of same appear in this record.

■ From this record A. J. Smith never became the owner of the superior title retained by Wynne, and he was not the owner of this title when Henry Jones executed the deed dated November 11, 1915. In Stephens v. Matthews' Heirs, 69 Tex. 341, 6 S.W. 567, it is said (page 569): "The vendor of land sold on a credit, when an express lien is reserved, is held to retain the legal title, and he may enforce payment of the purchase money by a sale of the land under decree; or, in the absence of equitable considerations forbidding it, he may cancel the executory contract of sale; but an indorsee or assignee of one or all the purchase-money notes have no right to cancel the contract of sale or to recover the land in default of payment of the purchase money. His sole right is to have the land sold and its proceeds applied to the satisfaction of the purchase-money notes held by him * * *."

Announcing this same rule of law are: Cassaday v. Frankland, 55 Tex. 452; Scott v. Watson, Tex.Civ.App., 167 S.W. 268; Smith v. Tipps, Tex.Com.App., 229 S.W. 307; Pope v. Witherspoon, Tex.Civ.App., 231 S.W. 837; Cleveland State Bank v. Gardner, 121 Tex. 580, 50 S.W.2d 786.

■ When Henry Jones executed this deed into Smith he was a tenant in common with Dink Kennedy. The power of a cotenant to act for and bind his cotenants is aptly stated in 11 Tex.Jur. p. 487, as follows: "Unlike the ordinary copartnership wherein each partner is the agent of all the others to transact the business, each owner in a cotenancy acts for himself and no one is the agent of another nor has any authority to bind him merely because of the relationship. So that, ordinarily, one dealing with property held in coparcenary can acquire only the rights of those individual cotenants with whom he bargains." See 7 R.C.L. p. 810; Compton v. Franks, Tex.Civ.App., 222 S.W. 988, writ refused; Shear Co. v. Lucas, Tex.Civ.App., 276 S.W. 935; Guarantee Mercantile Co. v. Nelson, Tex.Civ. App., 223 S.W. 543; Bielss v. Moeller, Tex.Civ.App., 83 S.W.2d 1098; 62 Cor. Jur. p. 545, § 225.

Thus it is concluded from the foregoing authorities that each owner in a cotenancy acts for himself and no one is the agent for the other nor has any authority to bind the other merely because of a relationship unless authorized to do so, or unless the facts create an estoppel, both of which elements are absent in this record. No contention is made that Kennedy knew of these transactions or that he ratified these acts of Henry Jones.

■ For the reasons above stated, we conclude that the conveyance by Jones to Smith did not encompass a rescission so as to be binding upon the interests of Dink Kennedy in this tract of land, and therefore did not divest them of this 1/14 undivided interest.

■ Henry Jones and wife by deed dated in November, 1916, filed for record in September, 1930, in consideration of $239, acquired from A. J. Smith a 66-acre tract, which includes this 25-acre tract. After the death of his wife, Henry Jones, the surviving husband, joined by five of the six children of this marriage, in 1920 conveyed the 25 acres involved in this suit to Rufus Jones, Jr., Eula (Jones) Givens, the sixth child, who did not join in this conveyance to Rufus, died intestate,

leaving T. J. Givens, her husband, and one child, Opal Jean Givens. Therefore, her interest of a $\frac{1}{12}$ of a $\frac{13}{14}$ in the tract was not conveyed by this deed into Rufus Jones. From the recitations in the above-mentioned deed, Henry Jones did not purport to convey to Rufus as an executor, administrator, or guardian, or as survivor of the community estate. The grantors are named in the instrument merely as individuals. This same observation also applies to the deed dated November 8, 1903, executed by the brothers and sisters into Henry Jones. The record legal titles stood in Henry Jones and Marcus Jones when conveyed off by their respective children.

As stated by the Supreme Court in Wethered's Administrator v. Boon, 17 Tex. 143: "The general doctrine is, that whatever puts a party upon an inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding." See, also, O'Mahoney v. Flanagan, 34 Tex.Civ.App. 244, 78 S.W. 245; 66 Cor.Jur. p. 1119, § 915.

The recitations in these deeds were sufficient to put any purchaser on inquiry as to why they were joining in the deed to Henry and with Henry Jones. These deeds are in the chain of title of every person involved in this lawsuit and each of them is charged with notice of the respective interests of the Kennedy heirs and Opal Jean Givens in the land.

Rufus Jones and Arah married in March, 1918, and were divorced in October, 1922. The conveyance of this land into Rufus, dated March 17, 1920, recites a consideration of $150 cash and the execution of three vendor's lien notes for the sum of $475, and reserves the vendor's lien to secure the payment of the notes. Rufus testified that the $150 used in the down payment was his separate estate, being made by him from the proceeds of the sale of an automobile which he had owned and paid for prior to their marriage. In this he is corroborated to a great extent by the records of a local bank. Arah, on the other hand, contended that the car was sold after the purchase of the land, and her testimony intimates that this down payment may have come from the sale of cotton, or his work on the railroad, or his earnings as a school teacher during their marriage. The jury found that the automobile was the separate estate of Rufus, and that he did not intend to make the purchase community property. But the record is still undeterminative as to whether all the $150 down payment was the separate estate of Rufus Jones. No inquiry was made of the jury as to whether the $150 was the separate estate of Rufus Jones, or what part of the $150 was community, if any, or what part was separate, if any. The status of property as being separate or community is fixed by the facts of acquisition at the time thereof. White v. Hebberd, Tex. Civ.App., 89 S.W.2d 482, 485; Hughes v. Robinson, Tex.Civ.App., 214 S.W. 946; Gray v. Kaliski, Tex.Com.App., 45 S.W.2d 157; Cummins v. Cummins, Tex.Civ.App., 224 S.W. 903. After the divorce, Arah moved to distant points; and, from this record, she asserted no claim to this land until after the discovery of oil. Rufus paid off all the vendor's lien notes after the divorce out of his own earnings, making the final payment in 1924. From the time of the divorce until the present, Rufus has been in possession of the property in person or by tenants, receiving the rents, and paying the taxes thereon. Under this latter phase of the case, appellants urged the ten-year statute of limitation, Vernon's Ann.Civ.St. art. 5510, and an estoppel. This record and the evidence is confusing on these issues. As the case is being reversed to determine the title between Rufus and Arah and those holding under her to the remaining royalty not disposed of in this appeal, we pretermit a discussion of these issues.

Rufus Jones was the record owner of the legal title when Daugherty and those claiming under him acquired their interests in the minerals. It was incumbent upon those claiming under Arah Crenshaw to prove that the Daugherty associates did not pay a valuable consideration for their respective interests, or that they had notice of the equitable title claimed by Arah Crenshaw. Howard v. Commonwealth Bldg. & Loan Ass'n, 127 Tex. 365, 94 S.W.2d 144; Nicholson v. Slaughter Co., Tex.Civ.App., 217 S.W. 716; Foster v. Christensen, Tex.Com.App., 67 S.W.2d 246; Davidson v. Renfro, 52 Tex.Civ.App. 483, 114 S.W. 449; Patty v. Middleton, 82 Tex. 586, 17 S.W. 909.

No issue is made that the Daugherty associates did not pay a valuable consideration for their purchases. No issue was requested or submitted to the jury on the question of actual notice.

Appellees, over objection of appellants, introduced in evidence for the purpose of showing constructive notice to the purchasers under Rufus Jones' title a certified copy of a divorce decree between him and Arah, his former wife, which had been recorded in the district clerk's office of Rusk county, Tex., but which had not been recorded in the County Clerk's office of that county. In this decree Arah is awarded custody of their child; a cow and calf as her separate property; one-half of certain other personal property as her part of community; and a homestead right in a tract of land. That portion dealing with any land reads:

"It is further ordered, adjudged and decreed by the Court that the plaintiff have the full control and possession of the homestead of the plaintiff and defendant, which is situated about three miles North West from the town of Pirtle, Texas, and upon which plaintiff and defendant resided until the final separation herein, and upon which the defendant now resides, a better description of same being unknown to this plaintiff and which can be secured from the defendant, who has their deed to said place in his possession, and containing about —— acres, with residence thereon, recorded in book —— page ——in Deed Records of Rusk County, Texas.

"That plaintiff do have and recover possession of same for the benefit and maintenance of the child, Lobis Jones."

■ This decree does not adjudicate title to or partition this tract, and it is not seriously contended in any of the briefs that it did. It is urged that this divorce decree, being a judgment in rem, of itself imparted notice, not only of the dissolution of marital status, but also of its recitals to a tract of land. Benn v. Security Realty & Development Co., Tex. Civ.App., 54 S.W.2d 146, writ refused, is decisive of this contention. In that case a divorce decree which had adjudicated title was recorded in the district clerk's office but not in the county clerk's office where the land was situated. Divers, who claimed to be an innocent purchaser for value, bought the land after the divorce decree and during the pendency of a suit in which a lis pendens notice had not been filed. In passing upon the contention there made, Chief Justice Walker said (page 150): " * * * The fact that the divorce decree, vesting Sabra Benn with a one-half interest in the property, was of record in the minutes of the district court of Jefferson county, did not visit Divers with constructive notice of its contents. In order to have the effect of constructive notice under article 6638, R.S.1925, it was necessary that the decree be recorded in the proper records in the office of the county clerk of Jefferson county. Russell v. Farquhar, 55 Tex. [355] 360. Nor did the pendency of the suit of Hander against Sabra Benn, which was on the docket at the time Divers purchased from Hander, give him constructive notice of the Sabra Benn interest. In the absence of the lis pendens statutes (articles 6640-6642, R.S. 1925), the pendency of that suit would have operated as notice to Divers, but the common-law rule on this issue was abrogated by these articles of the statute, and under them the mere pendency of the suit was ineffectual to charge him with notice of Sabra Benn's interest. [Citing authorities.] It follows that no issue of constructive notice was raised against Divers. Therefore, having neither actual nor constructive notice, he was an innocent purchaser of the Sabra Benn title and, as such, conveyed the superior title to Mrs. O'Fiel who, in turn, conveyed it to appellee."

■ It is apparent from the foregoing opinion that, if anything be included in the divorce decree intended to affect title to real estate, then such decree must be recorded in the office of the county clerk of the county where the land is situated, for otherwise, if the pleadings in a divorce action or a divorce decree which merely contained recitals to land which might put a third person on inquiry be constructive notice, it would become mandatory that this third person examine the minutes of all the district courts of Texas until such possible decree be found or be ascertained not to exist. Such a result would be saying if the decree adjudicates the title, then inquire at the county clerk's office where the land is situated for your notice, but if it merely contains a recital to land, then search the judgment rolls of all the district courts of Texas where a divorce can be granted after six months'

residence of a plaintiff. Hence we reach the conclusion that the recitals in the judgment roll of the district clerk's office pertaining to this decree did not effect constructive notice to the Daugherty associates. This same conclusion is applicable to the appellees Thetford, Bradley, and the Sun Oil Company.

The opinion in Roemer v. Traylor, 60 Tex.Civ.App. 437, 128 S.W. 685, contains this language (page 689): "The divorce proceeding was a proceeding in rem, of which he was affected with notice, without actual knowledge on his part." That case was not dealing with land or the registration statutes, and, in our judgment, is not in conflict with Benn v. Security Realty & Development Co., supra. That opinion was dealing with the question of necessary parties to a lawsuit.

The oil and gas lease dated September 11, 1930, which was for a primary term of ten years, contained the usual delayed rental clause providing for the payment of $25 each twelve months unless drilling operations had commenced on the tract. No drilling had commenced on this tract prior to September 11, 1933. The delayed rentals due on this last date was not timely paid by Warner-Quinlan Oil Company, who by mesne conveyances prior to that time had become the owner of said lease. A few days after this date Rufus Jones, the original lessor, was paid the delayed rentals which he appropriated to his own use. Daugherty associates who were claimants to ¼ of the minerals and rentals subject to the terms of the lease did not participate in any way in the payment to Rufus and received no part of same. The Daugherty mineral deed contained the usual reverter clause.

The lease provided: "No sale or assignment by lessor shall be binding on lessee for any purpose until lessee shall be furnished with an instrument in writing evidencing such sale or assignment." Daugherty associates had not given Warner-Quinlan Oil Company any notice of any conveyance to them.

 From the facts just stated, under the holding of Mitchell v. Simms, Tex. Com.App., 63 S.W.2d 371 and authorities there cited, the Daugherty associates became vested with fee-simple title to the ¼ of the minerals in place under said land free from above oil and gas lease; and the acceptance by Rufus Jones of the delayed rentals operated to estop him from claiming that the lease as to any interest still owned by him had terminated before the payment was made.

 But the proposition is advanced that there was a dispute concerning the title and this lease did not terminate because of the following provision in same: "If lessor owns an interest in said land less than the entire fee simple estate, then the royalties and rentals to be paid lessor shall be reduced proportionately. Should the right or interest of lessee be disputed by lessor, or any other person, the time covered by the pendency of said dispute shall not be counted against lessee either as affecting the term of the lease or the time for payment of rentals or royalties or for any other purpose and lessee may suspend all payments until there is a final adjudication or other determination of such dispute."

In Stanolind Oil & Gas Co. v. Christian, Tex.Civ.App., 83 S.W.2d 408, writ refused, the court had under consideration a clause in an oil lease which read (page 410): "In the event operations of lessee on said premises are delayed as a result of any cause whatsoever beyond the control of lessee or his assigns or in the event the title to said property is for any reason clouded by or action is filed in any court of law or equity, involving the title to said property or any part thereof, the time of such delay or the continuance of said cloud or court action shall not be counted in computing the term of this lease or the obligations thereunder."

This decision as well as Johnson v. Montgomery, Tex.Civ.App., 31 S.W.2d 160, 165, and Miller v. Hodges, Tex.Com.App., 260 S.W. 168, are based upon the maxim of law (page 172 of 260 S.W.): "Where the obligation of a party depends upon a certain condition being performed, and the fulfillment of that condition is prevented by the act of the other party, the condition is considered as fulfilled." The provision in the clause quoted from the present lease proceeds a step further and provides not only if the lessor, but if any other person disputes the title. It is not the province of the courts to make contracts for parties. And this provision so worded and made to include the acts of any other person not a privy to the lessor is so indefinite in nature as not to be held in high regard by the courts. The clause is to be construed most strongly against the lessee. 31 Tex.Jur. p. 613, § 54.

Prior to September 11th and within a year prior thereto, there had been filed in the Deed Records of Rusk County a power of attorney authorizing suit if necessary to recover her interest with a conveyance of ½ her undivided interest, executed by Arah Crenshaw and husband to W. H. Grier; also a power of attorney with a conveyance of a ½ their interest in the minerals executed by Dink Kennedy heirs to G. W. Morgan. Rufus Jones testified that Warner-Quinlan Oil Company had received oral information prior to September 11, 1933, that Arah Crenshaw was claiming ½ the tract. Warner-Quinlan Oil Company did not claim to know that either of the two powers of attorney and assignments of interests last above mentioned had been filed in the Deed Records of Rusk County. R. D. Fielder, the secretary-treasurer for the company at the time, who had charge of these items, testified that on September 13, 1933, it was discovered that the delayed rentals had not been paid on or prior to September 11th, and that immediately a check was made out to Rufus Jones for ¾ of same, and a check to the Sun Oil Company for ¼ in payment of these rentals; the check to the Sun Oil Company was mailed September 13th, and on same date Mr. Dechman, an official of the company, left immediately for Corsicana to see Rufus and pay him the rentals; and that Rufus was paid on the 14th or 15th. The canceled check to Rufus was cleared on September 16th. This is the explanation given by Warner-Quinlan Company why the delayed rentals were not timely paid, and it was undisputed. The recordation of above instruments prior to September 11, 1933, is undisputed. The jury found there was no dispute concerning the title, but the facts as here detailed present a question of law. The clause was not eliminated from the lease because of the procedure taken by Warner-Quinlan Company. From a discussion of the interests involved in the two powers of attorney heretofore made, it is noted that they were of a serious nature, and are in part the very basis of the present lawsuit. Therefore, it becomes unnecessary for this court to read into these provisions what character of dispute would not come within the terms of the provisions last quoted. We conclude that from the serious character of the two disputes involved in the instruments so filed the saving clause became operative, and the lease did not lapse.

The oil and gas lease executed by Rufus Jones to Laird not having lapsed; and the leasehold estate in September, 1934, therefore being in Moore; the Kennedy interest having made the partition agreement with Moore as to the leasehold estate; and the Givens' interest by the series of transactions having effected a partition of her interest with Moore in the leasehold estate, we conclude that the leasehold interests in the various subdivisions resulting from the Moore series of transactions should not be disturbed, and the judgment as to the respective awards of the several leasehold estates is affirmed.

The judgment which decrees to appellees Thetford, Bradley, and Sun Oil Company their respective interest in the royalty in the entire tract is affirmed.

The judgment which decrees to Opal Givens or her successor in title to the extent of $^{13}\!/_{168}$ interest in the royalty is affirmed.

The judgment is reversed and here rendered that Glenn Myers recover $\frac{1}{16}$ interest; Home Corporation, Limited, a $\frac{1}{24}$ interest; Black Arrow Oil Company, $\frac{1}{12}$ interest; Royal Petroleum Company, $\frac{1}{16}$ interest; Webb Kennedy, $\frac{1}{140}$ interest; Emma Montgomery, $\frac{1}{140}$ interest; Major Kennedy, $\frac{1}{140}$ interest; Savannah Butts, $\frac{1}{140}$ interest; Arthur Kennedy, $\frac{1}{140}$ interest; and G. W. Morgan, $\frac{1}{28}$ interest, respectively, in the royalty under the entire tract.

And that part of the judgment which denied Rufus Jones any interest in the surface or in the royalty, and that part which awarded Arah Crenshaw and associates an interest in the royalty, is reversed and remanded.

Therefore, the judgment of the trial court is affirmed in part, reversed and rendered in part, and reversed and remanded in part.

### On Motion for Rehearing.

From a further analysis of the record on motions for rehearing, we have concluded that the respective interests of the appellants were not correctly disposed of. At the time of the divorce decree in October, 1922, there was due on the purchase vendor's lien notes executed by Rufus the sum of $475, with interest from March 17, 1920, all of which Rufus paid by May, 1924, out of his earnings after the divorce. Arah testified that she had not paid or offered to pay any part of these notes or the taxes. She did not tender any part of this sum in the

trial or offer to do so in any of her pleadings. She had not been on the land since shortly after the divorce. She testified she first moved to Henderson, then to Chicago, and was then living in Fort Worth. In October, 1932, ten years after the divorce decree, she executed the power of attorney hereinbefore mentioned, then asserting an interest in this land. This history of her conduct and attitude towards this land is in keeping with the testimony of Rufus when he testified that after Arah came back to the farm shortly after the divorce to get her boy and the household furniture, she told him she did not want possession of the land, that it was not paid for and she was not going to pay a nickel on it, and she did not want the land; that he relied upon these statements and went ahead and paid out the land. Upon this phase of the case the jury, in answer to special issues, found that shortly after the divorce Arah stated to Rufus in substance and effect that she was not interested in the land, and that she would not pay anything on the unpaid vendor's lien notes; and that when Rufus paid off these notes he relied upon the statements made by Arah to him. These findings were not attacked in the trial court by Arah or the royalty owners holding under her.

After the entry of the divorce decree which did not adjudicate the title, Rufus and Arah became tenants in common, subject to all the rules and regulations of strangers bearing to each other that relation. Kirkwood v. Domnau, 80 Tex. 645, 16 S.W. 428, 26 Am.St.Rep. 770; Power v. City of Breckenridge, Tex.Civ.App., 290 S.W. 872; Freeman v. Pierce, Tex.Civ. App., 250 S.W. 778. If it be conceded that such interest as Rufus and Arah had in the land was community, it is evident that they had nothing more than a small equity, an executory contract under the terms of the deed under which they might have acquired the outstanding title only by paying the purchase price notes, two of which were then past due. In Dikes v. Miller, 24 Tex. 417, it is said: "Legal rights, when once vested, must be divested according to law, but equitable rights may be abandoned." See, also, Hill v. Preston, 119 Tex. 522, 34 S.W.2d 780; 66 Cor.Jur. p. 730; 1 Cor.Jur. p. 10, § 14; 11 Tex.Jur. p. 469.

And, as stated by Justice Greenwood of the Supreme Court in Johnson v. Smith, 115 Tex. 193, 280 S.W. 158, 160:

"Elymas Johnson being without title but holding a mere contract for a title conditioned on payment of the notes, and being unable to pay, could agree by parol for others to have the benefit of his contract. Mead v. Randolph, 8 Tex. [191] 196; Secrest v. Jones, 21 Tex. [121] 132. But for the payments procured by means of Elymas Johnson's promise to hold for plaintiffs in error, there would have been no divestiture of title out of Sherrod. Elymas Johnson was not contracting away title existing in himself."

From Arah's own testimony she knew there were purchase vendor's lien notes outstanding and it was incumbent upon her in order to protect her alleged equitable interest to pay or offer to pay at some seasonable time ½ of this indebtedness. She declared she would not pay anything on the land, as found by the jury, in keeping with her statement, did not make a move to assert her alleged claim for ten years, and not then until after this land had greatly enhanced in value. Under the doctrine of estoppel it would be wholly inequitable now for Arah to step in at this late day and recover an interest in this land. Upon this phase of the case, planting the issue upon equitable grounds or that of estoppel and very pertinent to the facts here, we quote from 54 A.L.R. 880, 910:

"In other words, equity does not deny to a cotenant the right to purchase an outstanding or adverse claim on the common property, although it will not permit him to acquire such title solely for his own benefit, or to the absolute exclusion of the others. At the same time it exacts from the others the exercise of reasonable diligence in making their election to participate in the benefit of the new acquisition, and will not permit them to equivocate or trifle with the possession thus afforded him, or make it the means of speculation for themselves, by delaying, until a rise in the price of the land, or some other event, shall determine their course. They must make their election to participate within a reasonable time, and contribute or offer to contribute their ratio of the consideration actually paid, or will be deemed to have repudiated the transaction and abandoned the benefits."

See, also, Magruder v. Johnston, Tex.Civ. App., 233 S.W. 665; Niday v. Cochran, 42 Tex.Civ.App. 292, 93 S.W. 1027; Becker v. Becker, 254 Mo. 668, 163 S.W. 865; Johnston v. Johnston, Tex.Civ.App., 204 S.W. 469; Thompson v. Robinson, 93 Tex.

165, 54 S.W. 243, 77 Am.St.Rep. 843; Glenn v. Lowther, 219 Ky. 383, 293 S.W. 947; Williams v. Cook, Tex.Civ.App., 272 S.W. 809.

The trial court upon request of appellees (leaseholders) submitted special issue No. 9, reading:

"Do you find from a preponderance of the evidence in this case that there was a dispute concerning the title to the land in controversy in this lawsuit on September 11, 1933?"

Jury answer: "No."

In our original opinion we concluded that said issue presented a question of law. Appellants (Daugherty associates) in their very able and exhaustive brief on motion for rehearing attack this conclusion. They assert that appellees requested the submission of this issue; failed to object to its submission; did not file a motion to enter a judgment non obstante veredicto to set aside the jury's finding on this special issue No. 9; and did not in their motions for new trial allege there was no evidence to raise the issue. It can not be said that the record does not reflect this condition as asserted by appellees. However, we are still of the opinion that Issue No. 9 submitted a question of law to the jury. The recordation of the two powers of attorney and assignment of interest in the Deed Records of Rusk County was constructive notice that the two claims were then being asserted. Both claims were of a serious nature and were largely the basis of this suit. We entertain no sympathy or respect for the clause in reference "to a dispute by any other person," but are without power to make a new contract in this court.

Our former judgment did not dispose of the interest in the oil already produced nor clearly provide for the disposition of production in the future or include the rights under the reverter clause in the oil and gas lease. In keeping with our former opinion together with such modification as contained herein, the final disposition of this appeal is as follows:

The judgment of the trial court as to the respective awards of the several leasehold estates is affirmed.

The judgment which decrees to appellees Thetford, Bradley, and Sun Oil Company their respective interests in the royalty in the entire tract is affirmed.

The judgment which decrees to Opal Givens or her successors in title to the ex-

tent of the surface fee title to the 4-acre tract and of $^{13}\!/_{168}$ interest in the royalty in the entire tract is affirmed.

The judgment is reversed, and here rendered that Webb Kennedy, Emma Montgomery, Major Kennedy, Savannah Butts, and Arthur Kennedy each recover a $\frac{1}{140}$ interest; and G. W. Morgan recover $\frac{1}{28}$ interest, respectively, in the surface fee title and the royalty under the entire tract.

That part of the judgment which denied Rufus Jones an interest in the surface or royalty, and that part which awarded Arah Crenshaw and those holding under her an interest in the royalty, is reversed, and judgment is here rendered in favor of Rufus Jones for $^{13}\!/_{14}$ of the surface fee title to the land in suit, less the four acres partitioned to the Givens, and for an undivided $\frac{5}{28}$ interest in the minerals in the entire tract including a like interest in the royalty subject to the oil and gas lease in favor of Laird, and subject to the partition contract between Rufus Jones and the Givens.

That part of the judgment which denied Daugherty associates a recovery is reversed, and here rendered that Glenn Myers recover a $\frac{1}{16}$ interest, Home Corporation, Limited, a $\frac{1}{24}$ interest, Black Arrow Oil Company a $\frac{1}{12}$ interest, and Royal Petroleum Company a $\frac{1}{16}$ interest, respectively, in and to all of the minerals in, under and that may be produced from the land in suit, subject to the terms and provisions of lease executed in favor of Laird together with an undivided interest in the same ratio in royalty due to be paid under said lease and in the possibility of a reverter.

As the value of the oil produced prior to November 1, 1935, is without dispute, judgment is here rendered that Glenn Myers, Home Corporation, Limited, Black Arrow Oil Company, and Royal Petroleum Company, collectively, recover of Sinclair-Prairie Oil Marketing Company, J. Beren and P. A. Wiley, jointly and severally, the sum of $442.01; and likewise of and from Fred Birdsong the sum of $144.17, and likewise of and from the Overton Refining Company the sum of $463.70.

And, further, that Rufus Jones recover of and from the Sinclair-Prairie Oil Marketing Company and J. Beren and P. A. Wiley, jointly and severally, the sum of $155.79, and likewise of and from Fred Birdsong the sum of $103, and likewise of and from Overton Refining Company the sum of $331.25.